[Civ. No. 61554. Second Dist., Div. Five. Sept. 29, 1981.]

LYNETTE JOHNSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SIERRA MADRE COMMUNITY HOSPITAL, Real Party in
Interest.

COUNSEL

Contos & Bunch and Bruce M. Bunch for Petitioner.

No appearance for Respondent.

Harrington, Foxx, Dubrow & Canter and Patty Mortl for Real Party in Interest.

OPINION

HASTINGS, J.— The issue presented in the present proceeding is whether petitioner has pleaded (or can plead) a valid cause of action for negligent infliction of emotional distress in a medical malpractice action resulting from the stillbirth of her child.

Petitioner's first amended complaint pleads two causes of action. The first, for personal injuries resulting from real party's alleged medical malpractice, claims damages for physical injuries to herself for shock to her nervous system and for injuries to her emotional health. She also pleads a separate cause of action for negligent infliction of emotional distress based upon the death of the fetus. In this cause of action petitioner alleges that she was a maternity patient at the real party hospital, that she was negligently and carelessly permitted to remain in labor for over 24 hours "with ruptured membranes" and without definitive treatment, that she "felt and perceived her then unborn viable fetus die within her body" and as a result of the sensory perception of the death of the fetus, petitioner suffered profound shock and emotional trauma.

Real party demurred to the second cause of action. Respondent sustained the demurrer without leave to amend. Petitioner seeks relief by way of the present petition for writ of mandate.

In support of the petition, petitioner makes certain additional factual allegations that were not alleged in the complaint, namely that a nurse employed by real party noticed certain abnormal staining of the amniotic fluid at 8 a.m., January 24, 1978, but failed to notify petitioner's

physician of this fact. This was some seven hours after petitioner was admitted to the hospital. Petitioner also alleges that she pleaded with her physician to perform a Caesarean delivery at 4:30 p.m., January 24, 1978, because her labor was not progressing, but that the physician refused. Twenty-four hours later, after continuous, unproductive labor, petitioner "felt her baby nod her head three (3) times and then felt her contractions cease." A nurse tried unsuccessfully to find the baby's heartbeat. The physician arrived at the hospital at about 6 p.m., January 25, 1978. He saw that the fetus had died and tried to induce labor through medication. Petitioner again pleaded with him to perform a Caesarean. He again refused. Induced labor was unsuccessful. The physician eventually performed a Caesarean section after midnight on January 26, 1978. An autopsy revealed that the fetus died of "meconium aspiration," the possibility of which the medical personnel should have been alerted to by the abnormal amniotic staining early in petitioner's labor.

A cause of action for emotional distress to a parent caused by witnessing the tortious death of a child was first recognized in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]. Petitioner expressly relies upon *Dillon* in pleading her second cause of action. The essential elements of such a cause of action, as stated in *Dillon*, are that: the plaintiff and the victim were closely related; the plaintiff was present at the scene of the accident; the shock to the plaintiff resulted from the plaintiff's sensory perception of the injury to the victim.

There have been two reported decisions in California dealing with the applicability of *Dillon* to the emotional distress suffered from the stillbirth of a child. Both involved attempts by the father to state such a cause of action. One, *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122], held that a cause of action could not be stated. The second, *Austin* v. *Regents of University of California* (1979) 89 Cal.App.3d 354 [152 Cal.Rptr. 420], on distinguishable facts, held that it could.

In *Justus* v. *Atchison, supra*, 19 Cal.3d 564, the child died as the result of a prolapsed umbilical cord. The Supreme Court held that the father was not within the ambit of *Dillon* because even though he was present in the delivery room he did not sensorily perceive the death of the child, but was told about it by medical personnel. The court further

stated that *Dillon* presupposes that the plaintiff was an involuntary witness to the accident. In *Justus* the court assumed that the father was present in the delivery room by choice; recognized that childbirth is always subject to complications; and while stating that it was not invoking the doctrine of assumption of risk, declined to extend *Dillon* to an arena in which emotional distress was an "ever-present possibility." (19 Cal.3d at p. 585.)

In *Austin v. Regents of University of California, supra*, 89 Cal.App. 3d 354, the plaintiff's wife had died during childbirth. After her death the plaintiff, who was in the delivery room, felt life in the fetus. He asked the attending physician and nurses to deliver the child. They refused. The child died and the plaintiff ascertained the death by feeling his wife's body. The court distinguished *Justus, supra*, on the ground that the plaintiff had personally sensorily perceived the death of the child. It was further held that since there was no issue raised as to the other two requirements of *Dillon*—presence at the scene and close relationship—a triable cause of action had been pleaded.

Petitioner is able to plead a sensory perception of the fetus' death more direct and more dramatic than Mr. Austin's. And her presence in the delivery room may be presumed to be involuntary in the sense that she had no choice but to be present at the birth of her child. Both of the barriers to recovery raised by the court in *Justus* have thus been hurdled by petitioner. Recognizing this fact real party raises two others.

First, real party contends that in order for a *Dillon*-type cause of action to exist, the plaintiff must have witnessed a sudden and brief tortious act which caused the injury to the victim. Real party relies upon *Jansen v. Children's Hospital Medical Center* (1973) 31 Cal. App.3d 22 [106 Cal.Rptr. 883], a case discussed with approval, but not relied upon, in *Justus v. Atchison, supra. Jansen* held that *Dillon* was inapplicable to a situation where a mother watched the progressive deterioration and eventual death of a hospitalized child allegedly due to negligent misdiagnosis. Here, according to real party's analysis, although the death of the fetus was sudden, the tortious act which caused it was not.

Real party, unlike the defendant in *Austin v. Regents of University of California, supra*, does claim that petitioner did not have the close relationship with the victim necessary to state a cause of action under

*Dillon.* In support of this allegation real party relies upon *Justus v. Atchison, supra,* which held that a fetus which is stillborn is not a "person" within the meaning of the wrongful death statutes. Whether or not a fetus is a person for wrongful death purposes is not determinative of whether a prospective parent can have a relationship with the fetus which would sustain a *Dillon* action. The court in *Justus* made it very clear that it was merely interpreting the legislative intent expressed in the wrongful death statute. The court did not discuss the father's relationship to the fetus, or lack thereof, in connection with the father's *Dillon* cause of action; and the court did refer to the fetus as the "victim," the term used in *Dillon.*

*Justus, supra,* and *Jansen, supra,* point up the difficulty of fitting a medically caused stillbirth neatly into the *Dillon* mold. It is nonetheless patently clear that a mother forms a sufficiently close relationship with her fetus during pregnancy so that its stillbirth will foreseeably cause her severe emotional distress. Where the stillbirth results from medical malpractice rather than from natural and unavoidable causes the loss is all the more poignant and should be legally redressable. The solution to the problem lies not in contorting *Dillon* to cover a situation which it was not designated to fit, but in recognizing that the emotional distress arising from the sensory impact of the death of the child is compensable as part of the mother's cause of action for malpractice to herself.

Support for this result is found in *Justus* v. *Atchison, supra.* There, in addition to the causes of action pleaded for wrongful death of the fetus and for the father's emotional distress, which were rejected by the Supreme Court, the mother had pleaded a viable cause of action for injuries personnally suffered by her in the negligent delivery. The court stated that medical and burial costs for the fetus were recoverable as incidental to the mother's cause of action for personal injuries. (*Justus* v. *Atchison, supra,* 19 Cal.3d 564, 581, fn. 15.) Similarly, the sensory perception of the fetus' death and the emotional distress which it causes are aspects of the mother's cause of action for personal injuries which enhance her measure of damages. Thus while, respondent court did not err in sustaining the demurrer to real party's second cause of action, petitioner should be permitted to amend her first cause of action to include a claim for damages for the emotional distress suffered as a result of the sensory perception of the death of her fetus, to the extent that the pleading does not now encompass such damages.

Let a peremptory writ issue directing respondent court to permit petitioner to amend her first cause of action in accordance with the views expressed herein. In all other respects the peremptory writ is denied.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied October 19, 1981, and the petition of real party in interest for a hearing by the Supreme Court was denied November 27, 1981. Kaus, J., did not participate therein.