[Civ. No. 24026. Fourth Dist., Div. One. Feb. 16, 1982.]

DOLORES SESMA et al., Plaintiffs and Appellants, v. JOSE M. CUETO, Defendant and Respondent.

**COUNSEL**

West, Powell & Glass, George O. West and Daniel P. Powell for Plaintiffs and Appellants.

Bonne, Jones, Bridges, Mueller & O'Keefe and Mark V. Franzen for Defendant and Respondent.

**OPINION**

**STANIFORTH, J.**—Plaintiffs Dolores and Ramon Sesma (Sesmas) appeal the dismissal of their complaint for wrongful death and emotional distress based on the death at birth of their infant child.

After answer and partial discovery, defendant Jose M. Cueto, M.D., was granted summary judgment as to both parties on both causes of action.

Defendant Mercy General Hospital has answered, did not seek a summary judgment, is not a party to this appeal. Plaintiffs contend, and we agree, that several material issues of fact remain, requiring trial.

## FACTS

On August 26, 1978, Mrs. Sesma entered Mercy General Hospital to give birth under the medical supervision of Dr. Cueto. In her deposition,[1] Mrs. Sesma relates her concern and apprehension upon perceiving she did not receive the medical care and attention as did the other patients around her. She was of the opinion Dr. Cueto and other medical staff were not adequately monitoring her progress in labor. After a considerable period of time had passed, a nurse did examine her but failed to detect a fetal heartbeat. The medical staff became noticeably alarmed and Mrs. Sesma was given immediate medical attention. She was prepared for, given a spinal block, and underwent a caesarean section. She does not recall whether she heard or saw the fetus. She was unable to understand the conversations taking place around her because she speaks no English.

Medical records reflect Dr. Cueto engaged in an unsuccessful 20-minute effort to resuscitate the child after removing it from the womb. In his declaration submitted in support of the motions for summary judgment, Dr. Cueto concludes Mrs. Sesma was delivered of "a stillborn fetus."

## DISCUSSION

### I

■ The California Supreme Court said in *Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441, 442 [116 P.2d 62] "By an unbroken line of decision in this state since the date of the original enactment of section 437c [Code Civ. Proc.], the principle has become well established that issue finding rather than issue determination is the pivot upon which the summary judgment law turns. [Citations.] ... 'A motion for summary judgment is not a trial upon the merits. It is merely to determine whether there is an issue to be tried.'" The same rule is in full force and effect today. (*City of Chula Vista* v. *Pagard* (1981) 115 Cal.App.3d 785, 801 [171 Cal.Rptr. 738].)

---

[1] Her attorney reports the substance of her deposition in his affidavit submitted in opposition to the second of Dr. Cueto's two summary judgment motions. Although the better practice would have been to quote verbatim from her deposition, we overlook this defect in form in order to deal with the substance of plaintiff's contention.

In *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10], the Supreme Court explained: ""The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." [Citation.]""

■ The trial court relied on *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122], for the rule that an action for wrongful death requires that the child be born alive. *Justus* so holds but in *Justus* the plaintiff conceded the feti were in fact stillborn. (*Id.*, at p. 569.) Here, that precise factual issue is surrounded by a conflict of inferences.

Mrs. Sesma's deposition statement that she never saw or heard the child delivered does not establish as a matter of fact that the child was born dead, since her lack of perception of that vital status is readily explained either by Dr. Cueto's occupation with the child in the resuscitation effort, or by Mrs. Sesma's anesthetized state.

Nor does Dr. Cueto's conclusionary statement that the fetus was stillborn meet the requirement for evidentiary facts. The doctor's statement is an ultimate fact or legal conclusion. ■ Facts set forth to support a grant of summary judgment must be evidentiary in quality. (*People* v. *Rath Packing Co.* (1974) 44 Cal.App.3d 56, 62-63 [118 Cal.Rptr. 438].) Conclusionary affidavits are insufficient for this purpose.

Moreover, the moving parties' affidavits are to be strictly construed and in case of doubt the motion should be denied. (*Loree* v. *Robert F. Driver Co.* (1978) 87 Cal.App.3d 1032, 1035 [151 Cal.Rptr. 557].)

■ And counteraffidavits disclosing evidence or "inferences reasonably deducible from such evidence" of a triable issue of fact require the denial of the motion. (*Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 185 [163 Cal.Rptr. 912].)

█ The doctor's conclusionary statement does not enlighten the court as to the child's vital signs, such as breathing, heartbeat, signs of cerebration, muscular activities or lack thereof. The Sesmas' attempts to gain such facts from the doctor were unsuccessful.

Moreover, reasonable inferences may be drawn from the medical records of the resuscitation effort and from Mrs. Sesma's deposition describing the attempted monitoring of the fetal heartbeat that the fetus was viable at the time of or very close to the time of delivery. On this record, the trial court should not have concluded there was no material issue of fact as to count one, the wrongful death cause of action.

## II

As to the second cause of action for shock, emotional distress, we apply the same *Walsh* test: Is there a factual issue to be tried?

Dr. Cueto contends the "'sensory and contemporaneous observance of the accident' requirement set forth in *Dillon* [*Dillon* v. *Legg* (1968) 68 Cal.2d 728 (69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]] and affirmed in *Justus* [has] not been met."

In *Dillon* the California Supreme Court held a mother who saw her young child struck and killed by the car of an allegedly negligent driver could state a cause of action for physical injuries suffered from the fright and shock of the event. "[T]hree factors [which are] to be taken into account in making that determination [are]: whether the plaintiff and the victim were closely related, whether the plaintiff was present at the scene of the accident, and 'Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.'" (*Justus, supra*, 19 Cal.3d at p. 582, citing *Dillon, supra*, at pp. 740-741.)

The question here is whether the second cause of action satisfies the last requirement and whether an unresolved factual issue remains.

█ The doctor's analysis of the facts disregards the issues of fact raised by Mrs. Sesma's deposition concerning her perception of and concern over the neglect she was receiving from medical personnel in the labor room, as contrasted to the care other patients were receiving. Such a perception could legitimately be found by a jury to constitute

"emotional distress" as that term is defined by BAJI No. 12.72, as well as to give rise to an inference of neglect.

In the second place, the grant of summary judgment on the second cause of action was error because Mrs. Sesma's emotional distress could have been personally and directly sustained in her own right, as contrasted to injury sustained in her "bystander" capacity[2] as a prospective mother distressed at injury inflicted upon her unborn fetus.

Although the issue of whether the Sesmas' baby was stillborn remains in factual dispute in count one, we note the recent decision which holds a plaintiff "can plead a valid cause of action for negligent infliction of emotional distress in a medical malpractice action resulting from the stillbirth of her child." (*Johnson* v. *Superior Court, supra*, 123 Cal.App.3d 1002, 1004.)

Thus whether a fetus is a person for wrongful death purposes is not determinative of the issue here of whether the prospective mother can have a relationship with the fetus which would sustain a *Dillon, supra*, 68 Cal.2d 728, specie of cause of action for emotional distress where a parent witnesses the tortious death of a child.

*Justus* v. *Atchison, supra*, 19 Cal.3d 564, held the *father* could not state a *Dillon* cause of action for the stillbirth of a child. In *Austin* v. *Regents of University of California* (1979) 89 Cal.App.3d 354 [152 Cal.Rptr. 420], it was ruled a father could state a *Dillon* cause of action where he had personally and sensorily perceived the death of his child in the womb of his just dead-in-childbirth wife.

A contrary holding is found in the earlier case of *Jansen* v. *Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22 [106 Cal.Rptr. 883]. However, *Jansen* is factually distinguishable. There was no sudden and brief traumatic event. *Jansen* is cited but not relied upon in *Justus, supra*, at page 583. *Johnson, supra*, 123 Cal.App.3d 1002, 1007, succinctly rationalizes these decisions, stating: "*Justus, supra*, and *Jansen, supra*, point up the difficulty of fitting a medically caused stillbirth neatly into the *Dillon* mold. It is nonetheless patently clear that a mother forms a sufficiently close relationship with her fetus during pregnancy so that its stillbirth will foreseeably cause her severe

[2]It is unreasonable to label a woman in labor a "bystander" as to any injury suffered by her fetus, considering the intimate physical and psychic connection between them. (See *Johnson* v. *Superior Court* (1981) 123 Cal.App.3d 1002 [177 Cal.Rptr. 63].)

emotional distress. Where the stillbirth results from medical malpractice rather than from natural and unavoidable causes the loss is all the more poignant and should be legally redressable. The solution to the problem lies not in contorting *Dillon* to cover a situation which it was not designed to fit, but in recognizing that the emotional distress arising from the sensory impact of the death of the child is compensable as part of the mother's cause of action for malpractice to herself."

## III

Mr. Sesma has set forth no facts removing himself from the ambit of the *Dillon* "bystander" rule. However, this rule of preclusion must be examined in light of the rule and reasoning of *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813]. The *Molien* case involved a negligent misdiagnosis of syphilis and consequent mental anguish by both of the marital partners, culminating in the initiation of dissolution proceedings. (*Id.*, at p. 920.) The Supreme Court held that the husband had stated a cause of action for negligent infliction of serious emotional distress, even absent accompanying physical injury. The Supreme Court recognized that negligently administered medical care can, under basic tort principles of foreseeability, be held in some circumstances to have been directed not only to the medical patient but also to his or her spouse. The court held: "We thus agree with plaintiff that the alleged tortious conduct of defendant was directed to him as well as to his wife [the patient]. Because the risk of harm to him was reasonably foreseeable we hold, in negligence parlance, that under these circumstances defendants owed plaintiff a duty to exercise due care in diagnosing the physical condition of his wife." (*Id.*, at p. 923.) ■ The *Molien* analysis has application in the present case, as the concept it introduces of a "direct victim" of a negligent act inflicted upon another bolsters not only the holding that Mrs. Sesma should be able to go to trial on the issue of whether she suffered emotional distress from the effects of any negligence affecting her fetus or herself in this case but also supports the conclusion that Mr. Sesma, the father, may be able to show that he is a "direct victim"—if not percipient witness—of negligent acts giving rise to infliction of serious emotional distress. (See Note, *Negligent Infliction of Emotional Distress: New Horizons After Molien v. Kaiser Foundation Hospitals* (1981) 13 Pacific L.J. 179, 191, 195.)

This court's ruling in *Aldaco* v. *Tropic Ice Cream Co.* (1980) 110 Cal.App.3d 523, 525-526 [168 Cal.Rrptr. 59], does not bar Mr. Ses-

ma's claim based upon the *Molien* rule. In *Aldaco*, the application of the *Molien* analysis and rule would have operated to cut off the plaintiff's claim by virtue of an accelerated statute of limitations bar. No such inequitable result arises from our giving effect to the *Molien* rule.

The judgment is reversed.

Brown (Gerald), P. J., and Cologne, J., concurred.