[No. B015574. Second Dist., Div. Seven. Oct. 28, 1986.]

LAZARO MARTINEZ, SR., et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Manuel Hidalgo, Robert J. Jagiello and Robert H. Sulnick for Plaintiffs and Appellants.

Golman & von Bolschwing, Bonne, Jones, Bridges, Mueller & O'Keefe, Greines, Martin, Stein & Richland, Martin Stein and Timothy T. Coates for Defendant and Respondent.

## OPINION

**LILLIE, P. J.**—Plaintiffs Lazaro Martinez, Sr., and Rosalba Martinez appeal from a judgment of dismissal entered against them and in favor of defendant County of Los Angeles upon order sustaining defendant's demurrer to the second and third causes of action of the first amended complaint without leave to amend.[1]

### I

### PLEADINGS

The minor and his parents sued the county and two physicians for medical malpractice and negligence. This appeal concerns only the third cause of action of the parents of minor plaintiff. The following are allegations of the first amended complaint, which we accept as true. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

*First Cause of Action*

The first cause of action is one for medical malpractice brought solely by minor plaintiff Lazaro Martinez, Jr. It alleges the following: Rosalba Martinez, pregnant with the minor plaintiff, entered Los Angeles County/ University of Southern California Medical Center where defendants "so carelessly and negligently examined, diagnosed, prognosed, cared for, treated and operated on the body and person of plaintiff, and his mother . . . so as to proximately cause the injuries and damage to [minor] plaintiff"; that as a proximate result of defendants' negligence, minor plaintiff sustained permanent neurological damage, cerebral palsy, and other internal injuries; that as a result of said injuries, minor plaintiff will never be able to function as a productive member of society; that minor plaintiff has sustained permanent and special damages for medical care, hospitalization, nursing care,

---

[1]The notice of appeal also identifies plaintiff Lazaro Martinez, Jr., as an appealing party. The trial court's order and judgment do not apply to minor plaintiff, Lazaro Martinez, Jr., and no argument is made by him on this appeal. The appeal by the minor's parents, Lazaro Martinez, Sr., and Rosalba Martinez is proper as the case involves multiple parties and the judgment entered leaves no issue to be determined as to them. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122].)

prosthetic appliances, physical, occupational and psychological therapy, and housekeeping care and treatment; that defendants breached their fiduciary duty to plaintiff and his mother by failing to disclose to them their acts of negligence such that at no time prior to September 24, 1984, were they aware of the conduct of defendants or that such conduct was negligent; that Rosalba Martinez asked the treating doctors why her child was in the condition he is, and she was told "'that's the way the baby was born,' that they knew that the heart stopped but did not know why." Minor plaintiff further alleged that to cover up their negligence, defendants dictated no summary of their procedures employed on the mother, no nurses notes were prepared regarding her treatment during the critical periods, and the fetal monitor strip was not properly maintained and hence lost; that none of the defendants informed plaintiff or his mother or father that "the child's condition was due to their negligent conduct in improperly administering pitocin, improperly failing to diagnose the condition of plaintiff Rosalba Martinez, as a diabetic, improperly performing an amniocentesis test, and delaying a Cesarean section until a point in time after the fetal heart tones disappeared."

### Second Cause of Action

The second cause of action, asserted by minor as well as his parents, incorporates all of the allegations in the first cause of action, and further alleges negligence in the selection, review, and evaluation by the county of the other defendant staff members, which negligence caused injury to minor plaintiff. The ruling sustaining demurrer to this cause of action is not here challenged.[2]

### Third Cause of Action

The third cause of action for negligence brought solely by minor's parents incorporates the allegations of the first and second causes of action. They allege that as a result of the negligent care and treatment of minor plaintiff by defendants, they have been "caused to suffer emotional distress, anxiety, and an inability to conduct the normal routine activities of their life [*sic*]"; that their lives have been totally restructured in the following respects: as the child lacks coordination, they must attend to him constantly to avoid

---

[2] Appellants' opening brief does not address the propriety of the trial court's ruling with respect to the second cause of action. While the notice of appeal was filed as to the order and judgment thereon, which included a dismissal of the second cause of action, appellants' failure to argue the impropriety of such ruling constitutes an abandonment of review thereof. (See *Wint* v. *Fidelity & Casualty Co.* (1973) 9 Cal.3d 257, 265 [107 Cal.Rptr. 175, 507 P.2d 1383, 90 A.L.R.3d 1185]; *Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388].)

injury to him; the child cries unceasingly unless administered to; they must attend to his breathing problems throughout the night; they are confined to their home and cannot participate in church, recreational or family matters because of the need to pay constant attention to the needs and demands of their brain-damaged child; Rosalba Martinez is unable to attend to her housework duties, to the needs of the other children, or to the obligations of her marital relationship due to the need to pay constant attention to minor plaintiff. Rosalba and Lazaro Martinez, Sr., further allege that their lives have been totally restructured, and for the balance of their normal life span, they will be required to restructure their lives in order to attend to the needs of their severely brain damaged and retarded child, which retardation and brain damage was caused by defendants' negligence; as a result of the emotional distress, anxiety and mental suffering which they have experienced and will experience for the balance of their natural lives, they are entitled to compensatory damages; that Rosalba Martinez, a housewife, and Lazaro Martinez, Sr., a musician, have been prevented from attending to their occupations and have lost earnings and will thereby lose future earnings.

The county demurred to the second and third causes of action asserted by Rosalba and Lazaro Martinez, Sr., on the ground that they failed to state causes of action. It is from the judgment of dismissal entered upon the order sustaining the demurrer without leave to amend that they appeal.

## II

### THIRD CAUSE OF ACTION
### (NEGLIGENCE)

 Here, the Martinez parents seek damages for emotional distress, for having "to restructure their lives" to care for minor plaintiff and for loss of personal future earnings. All of these damages are alleged to have resulted from the necessity to care for the minor who through the negligence of defendants is brain damaged and retarded.

 "The tort of negligent infliction of emotional distress is a variation of the tort of negligence. The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability." (*Slaughter* v. *Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1249 [209 Cal.Rptr. 189].) *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912], first recognized a cause of action for emotional distress to a parent caused by witnessing the tortious death of or injury to his/her child. In doing so, the court rejected the rule

that required the plaintiff be fearful for his or her own personal safety in order to recover. "Since the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis." (*Dillon* v. *Legg, supra,* 68 Cal.2d 728, 740; accord *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 166 [216 Cal.Rptr. 661, 703 P.2d 1].) In *Dillon* the court held that a mother who witnessed her young child struck and killed by an automobile could bring an action for the physical pain and suffering she sustained from the fright and shock of the event. The court found that the legal requirements of "duty" and "foreseeability" were met by the facts alleged (*Dillon, supra,* at p. 741); however, in order to "limit the otherwise potentially infinite liability which would follow every negligent act," (p. 739) and to define guidelines to aid in ascertaining whether a duty of care existed, the court stated: ". . . the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (68 Cal.2d at pp. 740-741.)

Parent plaintiffs herein do not claim to have stated a cause of action under *Dillon,* and have not done so because of the absence of allegations that their emotional distress resulted from perceiving "the defendant's conduct and the child's injury and contemporaneous awareness the defendant's conduct or lack thereof [was] causing harm to the child." (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, 170.) Indeed, in paragraph 29 of the first cause of action, incorporated by reference into the parents' cause of action for emotional distress, they allege: "At no time prior to September 24, 1984, were the plaintiffs aware of the conduct of defendants, and each of them, which caused the harm suffered by said plaintiffs, or that said conduct was negligent."

Rather, relying on *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813], parent plaintiffs contend they were direct victims of defendant's conduct. In *Molien,* a physician negligently examined plaintiff's wife, erroneously advised her she had contracted syphilis, and advised her to tell her husband of the diagnosis and have him tested for the disease. Those tests revealed the husband did not have syphilis. In his complaint, the husband claimed that as a result of the negligently erroneous diagnosis, his wife became upset and suspicious that

he had engaged in extramarital sexual activities; tension and hostility arose between them causing a break-up of their marriage and initiation of dissolution proceedings. (27 Cal.3d at p. 920.) Distinguishing *Dillon,* the court held that the husband was himself a direct victim of the alleged tortious conduct of defendant: "In the case at bar the risk of harm to plaintiff was reasonably foreseeable to defendants. It is easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse; Dr. Kilbridge's advice to Mrs. Molien to have her husband examined for the disease confirms that plaintiff was a foreseeable victim of the negligent diagnosis. . . . [¶] We thus agree with plaintiff that the alleged tortious conduct of defendant was directed to him as well as to his wife. Because the risk of harm to him was reasonably foreseeable we hold, in negligence parlance, that under these circumstances defendants owed plaintiff a duty to exercise due care in diagnosing the physical condition of his wife." (*Molien, supra,* 27 Cal.3d at p. 923.)

In the instant case, Rosalba and Lazaro Martinez, Sr., seek recovery for the emotional distress they suffer for restructuring their lives to take care of their brain-damaged and retarded child. They do not claim their distress to be a result of any conduct of defendant. Courts have not extended the *Molien* direct-victim cause of action to emotional distress which is derived solely from a reaction to another's injury. In *Wiggins* v. *Royale Convalescent Hospital* (1984) 158 Cal.App.3d 914 [206 Cal.Rptr. 2], the court rejected a wife's assertion of a cause of action under *Molien* for emotional distress arising out of physical injuries her husband suffered when defendant negligently failed to raise the safety rails of the husband's hospital bed, permitting him to fall. The court held: "In the instant case, plaintiff is not a 'direct victim.' Her emotional distress is derived *solely* from injuries to her husband. By contrast, the tortious conduct of the *Molien* defendant was directed 'to him [the plaintiff] as well as his wife.' . . . Furthermore, *Molien* presented a complex question of tort liability where the *nature* of the misconduct made the plaintiff a 'direct victim.' [Citation.] No such problem is presented here." (158 Cal.App.3d 918; original italics.) Similarly in *Budavari* v. *Barry* (1986) 176 Cal.App.3d 849 [222 Cal.Rptr. 446], the wife was held out not to be a "direct victim" of defendants' negligence in failing to detect her husband's lung cancer at an early curable stage causing him to die of lung cancer three years later. The court stated: "[R]espondents' breach of their duty of care ran *only* to their patient, appellant's husband; any risk of distress to the appellant herself was indirect, being the product of her reaction to her husband's illness." (176 Cal.App.3d at p. 853; original italics.)

In *Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, plaintiff alleged she was an eyewitness to the refusal of defendants, juvenile detention authorities,

to provide necessary medical attention to her seriously ill son, who was in defendants' custody. The court held that as a percipient witness to both defendants' negligence and the harm it inflicted on her child, she had a proper *Dillon* bystander cause of action, but not a *Molien* cause of action: "In *Molien* defendant's misdiagnosis was, by its very nature directed at both the wife and the husband. The wife was asked to tell her husband of the diagnosis and the husband was required to submit to tests. By contrast, here the defendants' negligence in the instant case was directed primarily at the decedent, with Mrs. Ochoa looking on as a helpless bystander as the tragedy of her son's demise unfolded before her. While she was a foreseeable plaintiff to whom the defendants owed a duty of care pursuant to our holding in *Dillon,* the duty owed was owed to her as a percipient witness, not as a direct victim of negligence." (Pp. 172-173.)

The instant pleading falls within the purview of the above cases, and can be distinguished from those cases that have permitted parents to assert a *Molien* cause of action based on injury to their child. In *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600 [208 Cal.Rptr. 899], the parents of a child born with Down's Syndrome were permitted to recover for emotional distress resulting from negligent prenatal care and the unwanted birth of such a child. On mandate proceedings the court held that the legal propositions advanced by defendant were not amenable to summary adjudication; however, the court, in dicta, addressed the issue of the parents' cause of action for emotional distress: "In this case we perceive both parents to be direct victims of the malpractice alleged. Mrs. Andalon was a party to the contract with the defendant and no issue of his duty to advise her concerning mongolism is tendered at this stage of the action. Mr. Andalon's interest in the receipt of information and advice on this topic mirrors hers. His injury is not merely derivative of Mrs. Andalon's injury but flows from his role as a participant in the reproductive life of the marital couple and its lawful choices. The tort duty arising from the contract, between defendant and Mrs. Andalon, runs to him, not merely because of the foreseeability of emotional harm to him, but because of the nexus between his significant interests and the 'end and aim' of the contractual relationship." (162 Cal.App.3d at p. 611; fn. omitted.) Rosalba and Lazaro Martinez, Sr., allege no facts showing that defendant's negligent conduct affected their lawful choices in their reproductive life as a married couple or otherwise affected the "end and aim" of a contractual relationship between defendant and themselves.

The court which decided *Andalon* also wrote the opinion in the recent case of *Newton* v. *Kaiser Hospital* (1986) 184 Cal.App.3d 386 [228 Cal.Rptr. 890]. It applied the analysis in *Andalon* to find a cause of action for negligent infliction of emotional distress where parents of a baby born with permanent

paralysis of the upper arm, allegedly caused by unnecessary and excessive traction to the baby's head with forceps during vaginal delivery, claimed they were direct victims of the negligent execution of the doctor-patient relationship for prenatal treatment and childbirth. The court agreed, and determined that a duty of care arose from the contract between defendant and the mother. We decline to adopt the analysis in *Newton* as we believe it to be an unwarranted extension of *Andalon* and results in a boundless liability for emotional distress of parents who "contract" for delivery of, or care for, a child who becomes a victim of medical malpractice.

*Andalon* and *Molien* are cases which merely expand the right to recover damages for emotional distress in medical malpractice causes. The statement in *Andalon* that "we perceive both parents to be direct victims of the malpractice alleged" (162 Cal.App.3d at p. 611), is a recognition that the parents there had a medical malpractice cause of action for defendant's negligent failure to detect Down's Syndrome during pregnancy and to properly advise the mother of that prospect. Similarly, the "direct victim" analysis in *Molien* means that defendant's conduct in offering advice to plaintiff, by making sure he was informed of the diagnosis so he could be tested for syphilis, apparently created a doctor-patient relationship and its attendant duties. Under *Newton,* however, recovery for emotional distress is permitted despite the fact that the negligent conduct does not involve rendering of care, treatment, or advice to the parents, and despite the fact that the parents do not meet the requirements of *Dillon* and *Ochoa.* We perceive *Newton* as a substantial departure from the limitations defined by our Supreme Court.

In *Accounts Adjustment Bureau* v. *Cooperman* (1984) 158 Cal.App.3d 844 [204 Cal.Rptr. 881], the *Molien* "direct victim" analysis was held to be properly invoked by parents who alleged they suffered emotional distress from learning the defendant psychologist's incorrect diagnosis that their two-year-old child suffered from an organic brain syndrome. The court in *Cooperman* held that the trial court had properly sustained a demurrer to the parents' cause of action for emotional distress, but remanded the case to give the parents an opportunity to amend to plead that the particular syndrome incorrectly diagnosed was a serious and frightening one and that they understood it as such and thereby suffered distress. (158 Cal.App.3d at p. 848.) *Cooperman,* like *Molien,* entailed the inaccurate diagnosis of a frightening disease and communication of that diagnosis to a family member who would foreseeably suffer emotional distress from hearing the diagnosis. Unlike those cases, the Martinez parents here do not allege negligent conduct that by its nature exposed them to fright or shock.

In *Sesma* v. *Cueto* (1982) 129 Cal.App.3d 108 [181 Cal.Rptr. 12], the court reversed a summary judgment in favor of defendant because it found

triable issues of fact with respect to a mother's cause of action for emotional distress based on the death at birth of her child, where in her deposition she related her concern and apprehension upon perceiving the neglect she was receiving from medical personnel in the labor room, as contrasted to the care other patients were receiving. "Such a perception could legitimately be found by a jury to constitute 'emotional distress' as that term is defined by BAJI No. 12.72, as well as to give rise to an inference of neglect. [¶] In the second place, the grant of summary judgment on the second cause of action was error because Mrs. Sesma's emotional distress could have been personally and directly sustained in her own right, as contrasted to injury sustained in her 'bystander' capacity as a prospective mother distressed at injury inflicted upon her unborn fetus." (129 Cal.App.3d at pp. 114-115; fn. omitted.) Both *Sesma* and an earlier case cited therein, *Johnson* v. *Superior Court* (1981) 123 Cal.App.3d 1002, 1007 [177 Cal.Rptr. 63], recognized that a mother's emotional distress from the death of her fetus or infant may be recovered as an item of damages as part of her cause of action for malpractice to herself. (*Sesma, supra,* 129 Cal.App.3d at pp. 115-116.)

Plaintiff parents here fail to allege any cause of action for medical malpractice in their own right. Unlike the parents in *Sesma* and *Andalon,* Rosalba and Lazaro Martinez, Sr., do not allege conduct on the part of defendant that entails a reasonably foreseeable risk of harm to them. Despite the allegations in the first cause of action that their child's condition was due to improperly administered pitocin, failure to diagnose the mother as a diabetic, an improper amniocentesis test, and a delayed Cesarean section, there is no allegation that such conduct caused any injury to either Mrs. or Mr. Martinez. The *Molien* cause of action is not free of any pleading requirements. "*Molien* contemplates that the circumstances of the case will be sufficiently pleaded to support the genuineness of the claim. . . . [¶] . . . The conclusion that the plaintiff in *Molien* had stated a cause of action for emotional distress was based on finding sufficient allegations of facts which could reasonably elicit serious emotional response. As the *Molien* court stated: 'The negligent examination of Mrs. Molien and the conduct flowing therefrom are objectively verifiable actions by the defendants that foreseeably elicited serious emotional responses in the plaintiff and hence serve as a measure of the validity of plaintiff's claim for emotional distress. . . .'" (*Accounts Adjustment Bureau* v. *Cooperman, supra,* 158 Cal.App.3d at pp. 847-848.)

The pleading at issue fails to allege conduct by defendant directed to the Martinez parents that elicited serious emotional response. Rather, their emotional distress and anxiety are alleged to arise from the negligent care and treatment of their minor son by defendants and an inability to conduct the "normal" routine activities of their lives. They also allege emotional

distress arising from their less than "normal" relationship with their injured son, which has affected their marital relationship and their parental relationship with their other children. Plaintiffs here seek recovery for what is essentially the loss of filial consortium. However, in *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461 [138 Cal.Rptr. 315, 563 P.2d 871] and its companion case, *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858], our Supreme Court respectively rejected claims of loss of consortium by parents for injury to a child, as well as by children for injuries to a parent. ■ As the Court noted in *Baxter:* "Our opinion in *Borer* v. *American Airlines* . . . explains the policy considerations which impelled us to conclude that a child should not have a cause of action for loss of parental consortium. Those reasons for the most part apply fully to the present issue of a parental claim for loss of filial consortium. The intangible character of the loss, which can never really be compensated by money damages; the difficulty of measuring damages; the dangers of double recovery of multiple claims and of extensive liability—all these considerations apply similarly to both cases." (19 Cal.3d at p. 464.)

■ While not conceding on oral argument that the third cause of action did not state a cause of action for negligent infliction of emotional distress, plaintiffs' counsel resorted to an argument that the facts alleged compel creation of a new cause of action to compensate the parents for "restructuring their lives." He acknowledged he knew of no authority in California or in any other jurisdiction to support such a "cause of action," but because of the hardship thrust upon parent plaintiffs by defendant's negligence, urged this court to extend defendant's liability to encompass the damage alleged. We decline the invitation for it appears to be just another way to circumvent the requirements for recovery for emotional distress articulated by our Supreme Court in that area of the law from *Dillon* v. *Legg, supra,* 68 Cal.2d 728 to *Ochoa* v. *Superior Court, supra,* 39 Cal.3d 159, and to recover damages for the care and attention to the needs and demands of the minor which are duplicative of the damages sought by minor plaintiff in his first cause of action for nursing care, therapy, housekeeping care and other extraordinary care. These damages are recoverable by the minor precisely to alleviate the financial and other burdens on his parents for his care. (See *Turpin* v. *Sortini* (1982) 31 Cal.3d 220, 238-239 [182 Cal.Rptr. 337, 643 P.2d 954]; *Shriver* v. *Silva* (1944) 65 Cal.App.2d 753, 768 [151 P.2d 528].)

In their opposition to defendant's demurrer, the Martinezes did not seek leave to amend the third cause of action, nor do they contend here that the failure to grant them leave to amend was an abuse of discretion. ■ The burden is on plaintiffs to demonstrate that the trial court abused its discretion in sustaining demurrer without leave to amend, and in what manner they can amend their complaint. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335,

349 [134 Cal.Rptr. 375, 556 P.2d 737].) ▉▉ The court properly sustained the demurrer to the third cause of action without leave to amend.

DISPOSITION

The judgment is affirmed.

Thompson, J., concurred.

**JOHNSON, J.**—I concur in the judgment in this case. Under the present state of judicial interpretations of the several causes of action discussed in the opinion, the demurrer was properly sustained. However, I respectfully request the California Supreme Court to reconsider its rejection of one of those causes of action. That one is the cause of action for loss of *filial* consortium the court refused to recognize in *Baxter* v. *Superior Court* (1977) 19 Cal.3d 461 [138 Cal.Rptr. 315, 563 P.2d 871].

I shall not belabor the reasons. They are similar to those urged eloquently by Justice Pauline Hanson in a recent request from the Fifth District (*Nix* v. *Preformed Line Products Co.* (1985) 170 Cal.App.3d 975 [216 Cal.Rptr. 581]) that the Supreme Court reconsider its rejection of a cause of action for loss of *parental* consortium.[1] They have also been stated well in Justice Mosk's dissent in *Baxter*. Although the case for allowing recovery for loss of *parental* consortium may be somewhat more persuasive than the case for allowing recovery for loss of *filial* consortium, I regard either as far more compelling than the rationale supporting the existing cause of action for negligent infliction of emotional distress. The injuries the plaintiffs suffer are more substantive, more difficult to feign, and more readily quantified and compensated than the momentary shock of witnessing a horrible accident or the insult of mistakenly being told one has a loathsome disease, or the like.

The instant case underscores the problem. If the allegations of the complaint are to be believed, the defendants' negligence deprived these parents of a healthy, fully normal child and all the long term satisfactions that would mean and instead left them with the long term physical, financial, and emotional burdens of raising a handicapped child. These are the very sorts of injuries a "loss of consortium" action is designed to compensate. How-

---

[1] The California Supreme Court refused to recognize a cause of action for loss of parental consortium in a decision filed at the same time as *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858]. These cases were filed only three years after the same court had recognized a cause of action for loss of *spousal* consortium in *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669].

ever, since California does not recognize such an action, the plaintiffs' lawyer had no choice but to attempt to contort this case into the mold of a cause of action for negligent infliction of emotional distress and, alternatively, to call for the creation of a brand new cause of action. This the lawyer should not have had to do. In an era when at least one California court allows unmarried cohabitants to recover for loss of consortium when their lovers are seriously injured[2] and the Supreme Court is seriously considering this possibility,[3] it is especially difficult to justify denying parents the right to recover for loss of consortium when their children suffer a similar fate.

Appellants' petition for review by the Supreme Court was denied January 15, 1987. Low, J.,* participated therein. Mosk, J., was of the opinion that the petition should be granted.

---

[2]See *Butcher* v. *Superior Court* (1983) 139 Cal.App.3d 58 [188 Cal.Rptr. 503, 40 A.L.R.4th 539].

[3]The California Supreme Court granted a hearing in *Elden* v. *Sheldon* (Cal.App.), an opinion which rejected a cause of action for loss of consortium to an unmarried cohabitant of an accident victim. (L.A. 32063, Apr. 25, 1985.)

*Assigned by the Acting Chairperson of the Judicial Council.