## McNally v. Etnoyer (No. 1)

*Catherine M. Mahady-Smith,* for plaintiff.
*John R. Sparks Jr.,* for defendant John J. Etnoyer, M.D.

PEREZOUS, *J.,* May 5, 1988 — Presently before the court are the preliminary objections of defendant John J. Etnoyer, M.D., in the nature of a motion to strike and a demurrer to the amended complaint filed by plaintiffs, Joyce A. McNally and Lewis C. McNally, on January 29, 1988. It has long been settled in Pennsylvania that a demurrer will be sustained "only when it appears, with certainty, that the law permits no recovery under the allegations pleaded, and the objection must be overruled if the allegations state a cause of action under any theory of the law." *Pa. Association of State Mental Hosp. Physicians v. Department of Corrections,* 103 Pa. Commw. 422, 426, 520 A.2d 909, 911 (1987). Under the above standard, these are the facts as pleaded by plaintiffs.

On December 31, 1985, Joyce McNally visited defendant Eastbrook Family Health Center, P.C. (Center). Defendant Miriam Eberly, CRNP, administered to Mrs. McNally a pregnancy test, which later proved positive. Although defendant Ivan B. Leaman, M.D., was the physician at all relevant times at the defendant Center, Mrs. McNally received prenatal care over the next six months only from nurse Eberly. Pursuant to a referral from Eberly, Mrs. McNally began receiving late pregnancy care in July 1986 from defendant Drs. May-Grant Associates (Associates), an association comprised of Doctors John C. May, M.D.; Ronald L. Plutnicki, M.D.; Charles B. Krespan, M.D.; John J. Etnoyer, M.D.; and William R. Walker, M.D., and engaged in the practice of obstetrics and gynecology.

Over the following two months, each member of the defendant Associates visited with Mrs. McNally on at least one occasion. When she went into labor on September 5, 1986, the Associates instructed her to go to defendant Lancaster General Hospital. At the hospital, defendant Walker performed a Caesarean section operation upon her while she and her husband observed.

The newborn, Charlene L. McNally, was delivered from the breech, or feet-first position, covered with meconium and not breathing. After suctioning, the infant was transferred to the neonatal intensive care unit and placed on artificial respiration. The baby was transferred to Children's Hospital of Philadelphia on September 15, 1986, but died the following day of meconium aspiration syndrome.

The amended complaint is divided into six negligence counts, five of which are directed toward defendants Eberly, Leaman, Center, Walker and the hospital, respectively. Defendant Etnoyer has also moved to strike paragraph 85 from count IV, which avers negligence by the defendant Associates, on the grounds that the 22 subparagraphs fail to notify him as to which acts are being alleged against him individually.

## MOTION TO STRIKE

At the outset, we note that it is arguable whether defendant Etnoyer was even intended by plaintiffs to be a party defendant subject to individual liability in the first place. *Kaplan v. Delaware County Republican Executive Comm.*, 7 D.&C. 2d 554 (1956). We arrive at this question because, unlike defendant Walker, the record indicates that Etnoyer was neither named as an individual defendant in the caption nor was he served with original process.[1] See, e.g., Pa.R.C.P. 423(3) (service upon unincorporated associations); 2 R. Anderson, Pa. Civil Practice §§ 1012.3, 1012.5 (3d ed. 1976). In paragraph 2 of his motion to strike, Etnoyer admits that defendant Associates is an "association" as plaintiffs allege in paragraph 6 of their amended complaint. Rule 21153(c) provides that a "plaintiff may join as parties defendant one or more members of such association in their individual capacity . . . for the purpose of enforcing any individual liability of such members upon the cause of action sued upon." Under Pennsylvania law, a suit against an unincor-

---

1. Although a member of Associates, defendant Etnoyer is represented by separate counsel in these preliminary objections. Defendant Associates have elected to respond to plaintiffs' allegations and demanded proof thereof at trial.

porated association is deemed to have been brought against the entity itself, not against its members as a class. *Underwood v. Maloney*, 256 F.2d 334 (3d Cir. 1958), cert. denied, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed. 2d 97. Nevertheless, as it is apparent that Etnoyer has submitted himself to our jurisdiction over him by voluntarily appearing in the present case and since neither side has objected on these grounds, the issue is now moot. See *Love v. Vincent,* 37 D.&C. 2d 429 (1964) (a "party" defendant is one who either is served with process or who voluntarily appears).

Defendant Etnoyer first contends that the amended complaint fails to conform to the specificity requirements of the Pennsylvania Rules of Civil Procedure and, thus, may be stricken as not in conformity to law or the rules. See Pa.R.C.P. 1017(b)(2). However, neither the motion nor the supporting brief avers which specific law or rules have been violated. Furthermore, the two trial court decisions cited by defendant involved motions for a more specific complaint pursuant to rule 1017(b)(3), not motions to strike. See *Burnett v. Mueller,* 48 D.&C. 2d 165 (1969); *Hock v. L. B. Smith Inc.,* 69 D.&C. 2d 420 (1974). A motion to strike must be overruled where it is substituted for a motion for a more specific pleading. *Huguet v. Foodsales Inc.,* 3 D.&C. 3d 136 (1977).[2]

2. But see 2 Goodrich-Amram 2d §1029(a):1, at 239-40, which advocates leniency in such situations. Even if we were to treat defendant's objection as a motion for a more specific complaint, we would hold that the amended complaint has sufficiently informed him "with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *Yonkovig v. Yonkovig,* 23 Northum. Leg. J. 57 (1950); 2 Standard Pa. Practice—Goodrich-Amram 2d §1017(b): 9, at

## DEMURRER

Next, defendant Etnoyer demurs[3] to plaintiffs' claim[4] in the amended complaint for negligent infliction of emotional distress. In paragraph 112, plaintiffs allege that they "sustained considerable emotional trauma as well as pain and suffering and a claim is made therefor." It is defendant's position that plaintiffs' claim must fail because they did not *contemporaneously* observe an identifiable and traumatic event. We disagree.

66. The amended complaint alleges that (a) Mrs. McNally was examined by defendant on at least one, and possibly two, occasions; (b) defendant failed to perform either a pelvic examination, a sonogram, or a diabetes study on her; and (c) defendant acted negligently in 22 ways as a member of defendant Associates.

3. Defendants Hospital, Center and Leaman have also filed preliminary objections to plaintiffs' claim for negligent infliction of emotional distress, which, although not assigned for disposition, will be governed by this discussion and ruling.

4. Plaintiffs' method for ordering their causes of action has confused defendant and this court. After pleading six negligence "counts" in a normal procedural fashion, they set forth a sequence of three "claims" from paragraphs 93 through 112, even though rule 1020(a) requires that each cause of action be stated as a separate "count."

Apparently, this innovative technique distracted defendant, whose demurrer erroneously attacks "counts" III and IV rather than claim III wherein the disputed action is found within the amended complaint. While we are on the diversionary subjection of proofreading, we refer defense counsel to the omission of page 4 from the exhibit attached to his preliminary objections. Not only does this prove paragraph 1 of the objections to be erroneous ("a true and correct copy . . . is attached hereto . . .") but it violates rule 1023(b), which states that an attorney's signature to a pleading constitutes a certificate that he has read it. Furthermore, since the numbering of the pages in a legal brief is extremely helpful, counsel's attention is also directed to Pa. Rules of Appellate Procedure 2173 and 2174 for the proper manner and contents of a brief.

## The Dillon "Bystander" Theory

The Supreme Court of Pennsylvania, in *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), adopted from the California Supreme Court case of *Dillon v. Legg*, 68 Cal. 2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968), a three-prong test to employ where the issue is one of a tortfeasor's duty to foresee liability for the emotional distress of a "bystander" who witnesses an accident:

"(1) Whether the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

"(2) Whether the shock resulted from a direct and emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

"(3) Whether plaintiff and the victim were closely related[.]" *Sinn* at 170-1, 404 A.2d at 685.

In applying the first two prongs of *Sinn* to the present facts,[5] defendant maintains that the allegedly inadequate prenatal care alone does not constitute an "accident" capable of being observed. Since defendant Associates' treatment of Mrs. McNally ended prior to the accident in the delivery room of defendant Hospital, defendant Etnoyer concludes that any negligent omissions on his part cannot be a basis for liability, citing to *Sinn* and its progeny. See, e.g., *Yandrich v. Radic,* 495 Pa. 243, 433 A.2d 456 (1981).

Although our research has uncovered no case law from our commmonwealth which has applied the *Dillon-Sinn* formula within the context of negligent

---

5. Defendant does not dispute that plaintiffs and their infant "were closely related," in satisfaction of the third *Sinn* prong.

prenatal care, we have found numerous cases on this issue decided by the California appellate courts. Since our state Supreme Court in *Sinn* looked to California tort law for guidance on the subject to emotional distress actions, we believe it would be beneficial to examine California's own adaptation of *Dillon* with regard to prenatal care.

In *Justus v. Atchison,* 19 Cal. 3d 564, 565 P.2d 122, 139 Cal. Rptr. 97 (1977),[6] the plaintiff husbands in two cases consolidated for trial alleged their presence throughout delivery, including when the attending physician announced that the feti were stillborn. In holding for the defendants, the California Supreme Court reasoned that the accident was hidden from the plaintiffs' contemporaneous perception because stillbirths, by their very nature, occur inside the womb. The shocking impact derived from what they were told by the doctors since the plaintiffs had no way of knowing until then that the infants had died prior to delivery. *Id.* at 584-5, 565 P.2d at 135-6, 139 Cal. Rptr. at 110-1. Three years after *Justus,* the same court issued a decision which has since provided an alternative avenue for courts to uphold complaints seeking emotional distress damages.

### The Molien "Direct Victim" Theory

In *Molien v. Kaiser Found. Hosps.,* 27 Cal. 3d 916, 616 P.2d 813, 167 Cal. Rptr. 831 (1980), it was held that a husband can maintain a cause of action for the negligent infliction of emotional distress where the complaint alleged that a defendant physician misdiagnosed the wife as having syphilis, instructed her to advise the plaintiff and required

6. Overruled in part on other grounds by *Ochoa v. Superior Court,* 39 Cal. 3d 159, 703 P.2d 1, 216 Cal. Rptr. 661 (1985).

him to submit to a blood test. The California Supreme Court distinguished *Dillon* by noting that Molien was a "direct victim" rather than a bystander; therefore, the court found it unnecessary to apply the *Dillon* test in arriving at its conclusion that the marital breakdown which ensued from the misdiagnosis was a reasonably foreseeable risk of harm. *Id.* at 923, 616 P.2d at 816-7, 167 Call. Rptr. at 834-5. Having discussed this distinction, we must now examine its various applications by the California Court of Appeals within the context of prenatal care.

In *Sesma v. Cueto*, 129 Cal. App. 3d 108, 181 Cal. Rptr. 12 (1982), a couple brought an action for emotional distress due to the death at birth of their infant child. At the hospital, the wife perceived that she was receiving inadequate attention while in labor. After awhile, a nurse examined her and detected no fetal heartbeat. Defendants then gave immediate attention to Mrs. Sesma and undertook a Caesarean section operation. The doctor engaged in an unsuccessful 20-minute effort to resuscitate the infant after removing it from the womb. A fact question existed as to whether the infant was stillborn.

Applying *Dillon,* the California Court of Appeals stated that Mrs. Sesma's perception of neglect could legitimately be found by a jury to constitute "emotional distress" from the effects of any negligence affecting her fetus. *Id.* at 114-6, 181 Cal. Rptr. at 15-6. However, the court also held that both parents had stated a *Molien* claim as direct victims in their own rights. *Id.* at 115-6, 181 Cal. Rptr. at 15-6. In comparing the applicability of *Dillon* and *Molien* to such facts, the court exhibited a preference for following *Molien* in future cases by noting that "[i]t is unreasonable to label a woman in labor a 'by-

stander' as to any injury suffered by her fetus, considering the intimate physical and psychic condition between them." *Id.* at 115, 181 Cal. Rptr. at 15.

In *Andalon v. Superior Court,* 162 Cal. App. 3d 600, 208 Cal. Rptr. 899 (1984), the parents of a child born with Down's syndrome were permitted to recover for emotional distress resulting from negligent prenatal care. The defending physician raised *Dillon* in his defense. The court agreed that a *Dillon* cause of action was not stated because the genetic "injury" to the child occurred in the womb, presumably at conception, and so the parents could not have been "transfixed with with horror at the sight of an injury *happening* to his or her child." *Id.* at 608, 208 Cal. Rptr. at 903. (emphasis supplied) Instead, it held that the husband and wife were direct victims of defendant's non-diagnosis of their child's condition. The physician, in his fiduciary capacity, was found to owe a tort duty to properly advise the wife under their contract. Furthermore, the husband was held to be a direct beneficiary of this duty imposed by the doctor-patient relationship because of his role as a participant in the reproductive life of the married couple and its lawful choices. *Id.* at 611, 208 Cal. Rptr. at 905.

The final California case we wish to include in our analysis is *Martinez v. County of Los Angeles,* 186 Cal. App. 3d 928, 231 Cal. Rptr. 96 (1986). There, the Court of Appeals stated that parents must allege negligent conduct that by its nature exposed them to fright, shock or other serious emotional response in order to maintain a *Molien* claim. *Id.* at 892-3, 231 Cal. Rptr. at 102-3.

As we held one year ago, the misdelivery of an infant is as much of an "accident" as the proverbial car striking the child's bicycle. *Ingram v. Cooper-*

*stein,* 70 Lancaster L. Rev. 567, 571 (1987). In the instant case, we may reasonably infer from the amended complaint for purposes of the demurrer that the physicians who delivered Charlene McNally would not have had to contend with the thick, copious meconium suffocating her but for the non-diagnosis of defendant Etnoyer and the associates concerning her breech position in the womb and the consequent rupture of Mrs. McNally's membrane during labor. Plaintiffs have alleged that Mrs. McNally expressed her concern to defendant associates on numerous occasions that her fetus lacked movement inside her. Under *Sinn, Dillon* and *Sesma,* we hold that this perception of neglect during the last stages of her pregnancy was contemporaneous with Etnoyer's non-diagnosis of her fetus's condition. Furthermore, it is our opinion that both parents have also stated a *Sinn-Dillon* claim because they allege their horror at the sight of an injury in the process of happening to their child, unlike the facts presented in *Justus* and *Andalon.*

We therefore find that plaintiffs have satisfied the criterion of averring a discrete and identifiable traumatic event under *Sinn* and its progeny. See *Tackett v. Encke,* 353 Pa. Super. 349, 509 A.2d 1310 (1986). Finally, we conclude that plaintiffs have made out a *Molien* cause of action by alleging that defendant's negligent conduct ultimately exposed them to serious and immediate emotional suffering, contrary to the fiduciary duty owing to both parents. See *Martinez, supra.*

Accordingly, we enter the following

## ORDER

And now, May 5, 1988, for the reasons set forth in the attached opinion it is hereby ordered that the

preliminary objections of defendant John J. Etnoyer, M.D., in the nature of a demurrer and a motion to strike, to the amended complaint of plaintiffs, Joyce A. McNally, individually and as administratrix of the estate of Charlene L. McNally, and Lewis C. McNally, be dismissed.