[Civ. No. 23938. Third Dist. Aug. 12, 1986.]

JAMES V. NEWTON, a Minor, etc., et al., Plaintiffs and Appellants, v. KAISER FOUNDATION HOSPITALS et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions is directed to publish all portions of this opinion except parts II and III.

## COUNSEL

Mart & deVries and Douglas K. deVries for Plaintiffs and Appellants.

Diepenbrock, Wulff, Plant & Hannegan, William B. Shubb and Raymond M. Cadei for Defendants and Respondents.

## OPINION

**SPARKS, J.**—In the published portion of this opinion we shall consider whether the parents of a child injured during childbirth stated a cause of action on their own behalf against a hospital and its doctors for negligent infliction of emotional distress. We hold that they did. In the unpublished portion we consider and resolve the statute of limitations issues in favor of plaintiffs.

Plaintiffs appeal from a judgment of dismissal entered after the superior court sustained a demurrer to their first amended complaint for medical malpractice.[1] In sustaining the demurrer the trial court held that all three causes of action in the complaint were barred by the statute of limitations, and that the third cause of action failed to state a claim as a matter of law. On appeal the plaintiffs raise issues concerning the validity and applicability of the statute of limitations for medical malpractice, and assert that their third cause of action states a cognizable cause of action for negligent in-

---

[1]The named defendants are Kaiser Hospital, Kaiser Foundation Hospitals, Inc. and Kaiser Permanente Medical Group. Only Kaiser Foundation Hospitals filed a demurrer to the complaint. For convenience, we shall collectively refer to all the parties defendant as Kaiser.

fliction of emotional distress. Because we agree with plaintiffs, we shall reverse the judgment of dismissal.

## FACTS

Since this appeal comes to us after an order sustaining a demurrer we shall accept as true all material, issuable, properly pleaded facts of the complaint. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; see also 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 898, p. 338.) The first amended complaint discloses that plaintiffs Rebecca K. Nowlin and Robert V. Newton are the parents of the minor plaintiff James V. Newton. James was born on August 29, 1967, while Rebecca was under the care and treatment of Kaiser for purposes of the delivery of a healthy fetus. During vaginal delivery Kaiser applied unnecessary and excessive traction to James' head with forceps. This resulted in injury to James' brachial plexus and resulted in a permanent and irreparable paralysis of the upper arm known as Erb's Palsy. (See 2 Schmidt, Attorney's Dict. of Medicine, p. E-102, Erb's Palsy.) Plaintiffs allege that James' injuries are the result of negligence of Kaiser in providing medical care.

Plaintiffs filed their complaint on September 27, 1983. In explanation for their delay in commencing this litigation, plaintiffs allege that they were ignorant of the exact nature and cause of James' injuries and could not have been expected to know of the nature and cause of the injuries. They allege that at the time of James' birth Kaiser told them that he had been born with his head and arm together and that this was a common form of birth. Kaiser knew that the probable cause of injury to James was the unnecessary and excessive traction to his head during vaginal birth and it intentionally omitted to tell plaintiffs that the injury could have been prevented by delivery through cesarean section rather than vaginal delivery. Kaiser intended that plaintiffs rely on its representations so that they would not pursue legal remedies, and the plaintiffs did rely on those representations until 1983 when they filed this action.

The first cause of action of the complaint seeks damages for personal injury to James due to Kaiser's negligence. The second cause of action is brought on behalf of Rebecca and Robert, and seeks compensation for expenses they have incurred and will necessarily incur in the future due to the injury to James. The third cause of action is also on behalf of Rebecca and Robert, and seeks damages for the negligent infliction of emotional distress.

Kaiser demurred to the first amended complaint. The trial court held that under the facts alleged the plaintiffs' duty of inquiry arose in 1979, and

thus all three causes of action were barred by the statute of limitations on medical malpractice actions set forth in Code of Civil Procedure section 340.5. The court also held that the third cause of action did not allege sufficient facts to constitute a cause of action. The demurrer was sustained without leave to amend and a judgment of dismissal was entered.

DISCUSSION

I

We will first consider whether the third cause of action of the first amended complaint states facts sufficient to constitute a cause of action. The trial court sustained the demurrer to the third cause of action on two grounds: the statute of limitations and the decision in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912]. The court found the decision in *Dillon* to be applicable because Robert was not present and Rebecca was unconscious during James' birth, and therefore neither parent was present to perceive the wrongful act which caused James' injury.

In *Dillon* the California Supreme Court "became the first American jurisdiction to hold that a parent who witnesses the negligent infliction of death or injury on her child may recover from the resulting emotional trauma and physical injury in cases where the parent does not fear imminent physical harm." (*Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 166 [216 Cal.Rptr. 661, 703 P.2d 1].) The *Dillon* court also established these guidelines to aid in ascertaining whether a cause of action had been stated: "In determining . . . whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." (*Dillon,* 68 Cal.2d at pp. 740-741.)

In establishing a cause of action for a percipient family member, the *Dillon* court noted that the prime concern in every case was to be foreseeability, because that factor is the chief element in determining a defendant's duty to the plaintiff. As the court later noted, the "touchstone of our analysis in *Dillon* was foreseeability." (*Ochoa* v. *Superior Court, supra,* 39 Cal.3d

at p. 166.) This determination of foreseeability was to be made on a case-by-case basis.

Lower courts at first tended to adhere rigidly to guidelines established in *Dillon*. (See e.g., *Jansen* v. *Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22, 24-25 [106 Cal.Rptr. 883].) The Supreme Court appeared to have endorsed that approach in *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122], by confining the tort solely to circumstances where the *Dillon* factors were present.

However, this cauterization of "the incursion of pure foreseeability . . . was not to be." (*Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 608 [208 Cal.Rptr. 899].) Instead, the Supreme Court rendered its decision in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813]. *Molien* permitted a husband to recover for emotional distress from the negligent misdiagnosis of venereal disease in his wife. Waving away any notion that *Justus* had capped the tort, the court announced that *Dillon* was apposite without being controlling—it and *Justus* were simply one species of fact pattern, that of the "bystander" scenario. Equally actionable were facts showing the plaintiff to be a "direct victim" of a defendant's negligence. (*Id.*, at pp. 921-923.)

Unfortunately, the court gave no indication of the meaning of "direct victim" for plaintiffs other than Mr. Molien. The unenviable tasks of distinguishing bystander from direct victim cases and establishing limits for the latter have been left to the lower courts with a "foreseeable" diversity of results. Kaiser—as is its due—tries to uphold the judgment by playing upon this confusion. It claims Robert and Rebecca are not direct victims because the malpractice was aimed at James, not them. Thus, Kaiser reasons, the parents are third parties and must comply with the *Dillon* guidelines.

As support for their position, they cite two cases decided immediately after *Molien* which denied recovery to parents. The first, *Cortez* v. *Macias* (1980) 110 Cal.App.3d 640 [167 Cal.Rptr. 905], held that a mother could not recover for negligently inflicted emotional distress for the death of her infant child caused by the defendant physician's malpractice because her shock derived, not from circumstances witnessed by her, but rather from being told later by her husband that the child was dead. The second, *Hathaway* v. *Superior Court* (1980) 112 Cal.App.3d 728 [169 Cal.Rptr. 435], similarly held that parents were precluded under the *Dillon* guidelines from recovering for the negligent infliction of emotional distress over the death of their son. There the child was electrocuted by a cooler outside a house while the parents were inside. Alerted by another child, the parents rushed

 ▄▄▄

outside, saw their son lying in a puddle of water and watched the unsuccessful efforts to save the boy's life. The court held that because there had been no showing that the parents saw, heard, or otherwise sensorily perceived the electrocution, the *Dillon* requirement of a direct emotional impact on the parents from the sensory and contemporaneous observance of the accident had not been met. Kaiser attempts to distinguish ipse dixit two cases upholding direct victim recovery as "fly[ing] in the face of controlling law."[2] Adding to the din are two more recent cases cited in the plaintiffs' reply brief.[3] It is tempting to play the role of an appellate harmonizer and attempt to bring order out of this chaos, but given our recent decision in *Andalon* v. *Superior Court, supra,* 162 Cal.App.3d 600, that effort is unnecessary.

In *Andalon,* in order to rationalize the direct victim question, we analyzed the concept under the theory of *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16]. *Biakanja* had ruled that the duty of care for tortious breach of a contract extended to third party beneficiaries of a contract. The application of this principle removed discussion of *Molien* direct victims from an "amorphous nether realm" to the concrete context in which the case came before the court: the patient-doctor relationship. If not thus concretely linked to a legal relationship the quest for foreseeability is endless because foreseeability, like light, travels indefinitely in a vacuum. Instead, by linking foreseeability with that relationship, the degree to which an existing duty is to be extended could be rationally analyzed. (162 Cal.App.3d at pp. 609-610.) Thus in both *Molien* and *Andalon* the doctor-patient relationship with the wife directly implicated the interest of the husband: in *Molien,* misdi-

---

[2]In one of those two cases, *Sesma* v. *Cueto* (1982) 129 Cal.App.3d 108 [181 Cal.Rptr. 12], the court held that mother of a stillborn child had a cause of action for negligent infliction of emotional distress. It concluded that it was "unreasonable to label a woman in labor a 'bystander' as to any injury suffered by her fetus, considering the intimate physical and psychic connection between them." (*Id.,* at p. 115, fn. 2.) The father was also held to have a cause of action under *Molien* because he "may be able to show that he is a 'direct victim'— if not percipient witness—of negligent acts giving rise to infliction of serious emotional distress." (*Id.,* at p. 116.) *Johnson* v. *Superior Court* (1981) 123 Cal.App.3d 1002 [177 Cal.Rptr. 63], reached a similar result in another stillborn case. The *Johnson* court reasoned that where "the stillbirth results from medical malpractice rather than from natural and unavoidable causes the loss is all the more poignant and should be legally redressable. The solution to the problem lies not in contorting *Dillon* to cover a situation which it was not designated to fit, but in recognizing that the emotional distress arising from the sensory impact of the death of the child is compensable as part of the mother's cause of action for malpractice to herself." (*Id.,* at p. 1007.)

[3]*Accounts Adjustment Bureau* v. *Cooperman* (1984) 158 Cal.App.3d 844, 849 [204 Cal.Rptr. 881] (parents of misdiagnosed child stated a cause of action for emotional distress under *Molien* because "having sole responsibility for their child [parents] can be direct victims of their child's misdiagnosis"); *Wiggins* v. *Royale Convalescent Hospital* (1984) 158 Cal.App.3d 914 [206 Cal.Rptr. 2] (wife failed to state a cause of action for emotional distress when her husband was seriously hurt in a fall from his hospital bed because she was neither present at the accident nor a direct victim).

agnosis of a venereal disease directly implicated the sexual component of the marriage in which Mr. Molien obviously had an interest, while in *Andalon* the failure to diagnose a genetically malformed fetus implicated "the reproductive life of the . . . couple and its lawful choices" in which Mr. Andalon also had an interest albeit subordinate to his wife's. (*Id.*, at p. 611 and fn. 7.)

In this case, an obstetrician-patient relationship existed. It cannot be gainsaid that the mother is a direct victim of the alleged negligence committed in the execution of this relationship which resulted in injuries to her child. (*Andalon*, 162 Cal.App.3d at p. 611; *Sesma*, 129 Cal.App.3d at p. 115 and fn. 2; *Johnson*, 123 Cal.App.3d at p. 1007.) Furthermore, the relationship between Kaiser and Rebecca implicated the reproductive efforts of the couple, which personally interests Robert.

In their complaint, the parents allege the relationship between Kaiser and Rebecca for the purpose of prenatal treatment and childbirth.[4] They further allege that they were the direct victims of the negligent execution of this relationship, which was the actual and proximate cause of their emotional distress at their son's injuries. This is sufficient to state a claim under *Andalon* without amendment. To deny recovery in this circumstance on grounds of *Dillon* would misconstrue that decision. After all, *Dillon* was an action against a stranger for damages for emotional distress to a parent caused by viewing an automobile accident involving her child. The question was whether the defendant driver owed a duty to a plaintiff not struck by the car and in answering that question the court focused on foreseeability. (68 Cal.2d at pp. 740-741.) That is all well and good where there is no relationship between the parties, but here Kaiser entered into a contract with the mother to provide care for herself and child during the birth process. A duty of care may arise from contract even though there would otherwise be none. (*Eads* v. *Marks* (1952) 39 Cal.2d 807, 810 [249 P.2d 257].) The mother had a contract with Kaiser by which it undertook, for consideration, to provide care and treatment for the delivery of a healthy fetus. Kaiser's contract was the source of its duty and a determination of foreseeability is unnecessary to establish a duty of care. Under *Andalon*, that duty extended to the father as well. In short, nothing in *Dillon* purports to diminish duties which arise as a result of contractual relationships between the parties.[5]

---

[4]Presumably the plaintiffs will want to amend the 1968 date for the commencement of the doctor-patient relationship, since it is alleged James was born in 1967.

[5]Nor is there anything in *Ochoa* to change this result. There the plaintiff's son was admitted to the custody of a juvenile hall and became ill. Proper medical care was not rendered despite plaintiff's urgent pleas. The son died and the high court concluded that the mother was a foreseeable plaintiff to whom the defendants owed a duty of care under *Dillon*. The court went on to say that plaintiff had not stated a cause of action as direct victim of defendant's

Since Kaiser's duties arose contractually, the trial court erred in holding that the third cause of action failed to state a valid cause of action.

## II, III*

. . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of dismissal is reversed and the matter is remanded with directions to the trial court to vacate its order sustaining Kaiser's demurrer and to enter a new order overruling the demurrer.

Carr, Acting P. J., and Sims, J., concurred.

---

negligence under *Molien*. This was because defendant's negligence was directed primarily at the decedent son, with his mother looking on as a helpless bystander. Thus, the duty was "owed to her as a percipient witness, not as a direct victim of negligence." (*Ochoa* v. *Superior Court, supra*, 39 Cal.3d 159, 173.) But in *Ochoa* there was no contract between the defendants and the son or the mother. The defendants were strangers to both the mother and son, and their duty to the third party mother arose, if at all, only under the principles of *Dillon*.

*See footnote, *ante*, page 386.