[No. B018629. Second Dist., Div. Seven. Oct. 31, 1986.]

BONNIE KOSSEL et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LANCE JUDKINS et al., Real Parties in Interest.

**COUNSEL**

Glickman & Glickman and Steven C. Glickman for Petitioner.

No appearance for Respondent.

Tuverson & Hillyard, Timothy M. Ness and Scott R. Diamond for Real Party in Interest.

## OPINION

**JOHNSON, J.**—Petitioner Bonnie Kossel for herself and as guardian ad litem for her daughter, Emily Rose Kossel, requests a writ of mandate. They seek to set aside an order of the trial court sustaining without leave to amend real party's demurrer to the cause of action for negligent infliction of emotional distress in their second amended complaint.

Petitioner seeks recovery for emotional distress occasioned by the misdiagnosis of her husband Edward Kossel who died of Hodgkin's disease. The real party in interest is Lance Judkins, M.D., a defendant in the action.[1] At issue is whether petitioner can state a cause of action for the negligent infliction of emotional distress where she first learns of a favorable but erroneous diagnosis about her spouse's physical condition then learns he has a fatal illness. For the reasons set forth below, we decide she cannot under the existing state of the law.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

In ascertaining the sufficiency of the cause of action against the demurrer we follow the rule "a general demurrer admits the truth of all material factual allegations in the complaint; that the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court; and that plaintiff need only plead facts showing that he may be entitled to some relief." (Citations omitted.) (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

The allegations of the second amended complaint are summarized as follows. On or about November 25, 1983, and thereafter Edward Kossel consulted Lance Judkins, M.D., about a tumor. He engaged the physician's services to examine, diagnose, prescribe medicines and drugs, and to perform surgery in treating him. (Similarly, on or about Nov. 30, 1983, he consulted Dale J. Gierthy, M.D., and retained his services for compensation.) Both Mr. and Mrs. Kossel knew of the tumor before Mr. Kossel went to see Dr. Judkins who (along with Dr. Gierthy) advised him it was a benign fatty tumor and not Hodgkin's disease. After being examined by Dr. Judkins, Mr. Kossel informed his wife of defendant's diagnosis he had only a benign tumor and not Hodgkin's disease. Bonnie Kossel felt relieved and secure her husband was healthy.

The negligent misdiagnosis was discovered on or about March 21, 1984. It was determined Edward Kossel was suffering from a malignant cancer,

---

[1]Defendant Dale J. Gierthy, M.D., was not a party to the demurrer below.

Hodgkin's disease, which had spread to other parts of his body. Petitioner's false sense of security was shattered at learning of the correct diagnosis. Because of the time lapse that resulted from the misdiagnosis, the disease had progressed from a curable to an incurable condition as it spread throughout Mr. Kossel's body. As a proximate result of Dr. Judkins' negligence, Edward Kossel died on September 29, 1984.

Following the news of the correct diagnosis on or about March 21, 1984, until his death on September 29, 1984, petitioner endured Mr. Kossel's decline as he underwent the rigors of medication, chemotherapy, radiation therapy, and numerous hospitalizations. He was no longer able to perform his duties as husband and father. Because Mr. Kossel had previously been the sole wage earner in the family, petitioner suffered severe financial hardship. Dr. Judkins prescribed Valium to Mrs. Kossel to help her cope with the stresses caused by Mr. Kossel's deteriorating condition as she spent her full time caring for him. Mrs. Kossel was subsequently hospitalized in a psychiatric unit for two weeks where she received extensive psychiatric therapy. She continues to receive psychiatric therapy.

Petitioner's second amended complaint sets forth three causes of action: wrongful death, negligent infliction of emotional distress and loss of consortium. Real party Judkins demurred to the negligent infliction of emotional distress claim on the ground it did not state sufficient facts to constitute a cause of action. Respondent sustained the demurrer without leave to amend and dismissed it as to real party Judkins. Mrs. Kossel seeks relief by petitioning for writ of mandate.

### DISCUSSION

█ A petition for a writ of mandate may be maintained to vacate an order which would bar a substantial portion of the plaintiff's case from being heard on the merits. (*Nazaroff* v. *Superior Court* (1978) 80 Cal.App.3d 553, 558 [145 Cal.Rptr. 657]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 806-807 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) We granted an alternative writ of mandate to consider whether a cause of action can be stated for negligent infliction of emotional distress in the circumstance of this case.

### I. PETITIONER DID NOT STATE A CAUSE OF ACTION FOR THE NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER *MOLIEN* AS SHE IS NOT A DIRECT VICTIM OF DR. JUDKINS'S NEGLIGENCE

This case is a nearly perfect illustration of the arbitrariness of the "rules" courts have imposed on claims of negligent infliction of emotional distress

and the confusion which reigns in their wake. It also highlights the tension found *within* the leading Supreme Court opinions in this field. On the one hand, these opinions contain language emphasizing emotional distress claims are to be judged by flexible application of general principles of foreseeability. (See, e.g., "[In *Dillon* v. *Legg*] [w]e . . . identified foreseeability of the risk as the critical inquiry: . . . And the foreseeable risk may entail not only actual physical impact, but emotional injury as well . . . . Such reasonable foreseeability does not turn on whether the particular [defendant] as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances, will decide what the ordinary man under such circumstances should reasonably have foreseen." (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 922 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].) This implies plaintiffs can recover if it was reasonably foreseeable the defendant's negligent act or omission would cause them serious emotional distress.

But in the next breath these very same opinions go on to establish narrow, rigid tests—sometimes labeled "guidelines"—for what can be deemed to create a foreseeable risk of emotional distress. (See, e.g., *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740-741 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, 923-924.) Despite Supreme Court protestations these "guidelines" are not meant to straightjacket the general principles of foreseeability, most Courts of Appeal—and to a certain extent the Supreme Court itself—have treated the guidelines as fixed criteria which must be satisfied before they will grant recovery for emotional injury. (See, e.g., *Justus* v. *Atchison* (1977) 19 Cal.3d 564 [139 Cal.Rptr. 97, 565 P.2d 122]; *Jansen* v. *Children's Hospital Medical Center* (1973) 31 Cal.App.3d 22 [106 Cal.Rptr. 883]; *Hair* v. *County of Monterey* (1975) 45 Cal.App.3d 538 [119 Cal.Rptr. 639]; *Parsons* v. *Superior Court* (1978) 81 Cal.App.3d 506 [146 Cal.Rptr. 495, 5 A.L.R.4th 826]; *Cortez* v. *Macias* (1980) 110 Cal.App.3d 640 [167 Cal.Rptr. 905]; *Budavari* v. *Barry* (1986) 176 Cal.App.3d 849 [222 Cal.Rptr. 446]; *Deboe* v. *Horn* (1971) 16 Cal.App.3d 221 [94 Cal.Rptr. 77]; *Powers* v. *Sissoev* (1974) 39 Cal.App.3d 865 [114 Cal.Rptr. 868] and *Arauz* v. *Gerhardt* (1977) 68 Cal.App.3d 937 [137 Cal.Rptr. 619].)

Thus, for most California courts it is not enough a plaintiff demonstrates a defendant could reasonably foresee his negligence would cause significant emotional distress among persons in the plaintiff's class. The claimant must also show she or he fits into one of two narrowly defined classes of emotional injurees—either a "bystander" to a traumatic incident injuring a close relative or a "direct victim" who was a target of the defendant's negligent conduct. Occasionally, a Court of Appeal evidently bemused by the Supreme

Court's general foreseeability language will allow recovery where the situation fails both of these tests. This is done either by stretching the words of the "guidelines" beyond recognition or by stressing the Supreme Court's more general requirement the emotional injury be reasonably foreseeable. (See, e.g., *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022]; *Sesma* v. *Cueto* (1982) 129 Cal.App.3d 108 [181 Cal.Rptr. 12]; *Archibald* v. *Braverman* (1969) 275 Cal.App.2d 253 [79 Cal.Rptr. 723]; *Mobaldi* v. *Regents of University of California* (1976) 55 Cal.App.3d 573 [127 Cal.Rptr. 720].)

Petitioner purports to fit one of the narrow categories of emotional injuries already entitled to recover—the so-called "direct victim." However, as we document later, she does so by converting the narrow "direct victim" test into a broad "general foreseeability" standard. In this, she joins a few Courts of Appeal which appear to have done the same. Unfortunately for her cause, the Supreme Court recently made it clear it does not construe the "direct victim" theory this generously.

■ Plaintiff asserts she has stated a cause of action for negligent infliction of emotional distress under *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, because she is a direct victim of Dr. Judkins's negligence since her emotional injuries were foreseeable and serious. In *Molien* the Supreme Court held the plaintiff husband had stated a cause of action for the negligent infliction of emotional distress which resulted from the negligent examination of his wife "and the conduct flowing therefrom." (27 Cal.3d at pp. 930-931.) Mr. Molien alleged his wife had gone for a routine multiphasic physical examination where she was negligently misdiagnosed as having an infectious type of syphilis. Defendants instructed Mrs. Molien to advise her husband of the syphilis. Plaintiff husband was required to undergo blood tests to determine whether he had contracted syphilis and was the source of his wife's infection. (27 Cal.3d at p. 919.) Plaintiff did not have the disease, but as a result of the misdiagnosis, his wife became upset and suspicious. The tension and hostility eventually culminated in a breakup of their marriage. (27 Cal.3d at p. 920.)

The Supreme Court observed it was reasonably foreseeable to defendants an erroneous diagnosis of syphilis and its probable source would cause emotional distress in the patient's spouse. (*Id.,* at p. 923.) It reasoned defendants' "alleged tortious conduct" was directed at the husband as well as at his wife. (*Ibid.*)

Some of the broad language in *Molien* could be construed to allow recovery by anyone whose *serious* emotional injury the defendant could reasonably foresee. At one point, for example, the Supreme Court observes: "The

negligent examination of Mrs. Molien and the conduct flowing therefrom are objectively verifiable actions by the defendants that foreseeably elicited serious emotional responses in the plaintiff and hence serve as a measure of the validity of plaintiff's claim for emotional distress." (27 Cal.3d at pp. 930-931.) And indeed at least one Court of Appeal appears to have seized on that general notion to give a father a cause of action for emotional distress when his child was stillborn in a caesarean delivery. (*Sesma* v. *Cueto, supra,* 129 Cal.App.3d 108, 116.) "The Supreme Court [in *Molien*] recognized that negligently administered medical care can, under basic tort principles of foreseeability, be held . . . to have been directed not only to the medical patient but also to his or her spouse . . . . The *Molien* analysis has application in the present case, as the concept it introduces of a 'direct victim' of a negligent act inflicted upon another bolsters not only the holding that Mrs. Sesma should be able to go to trial on the issue of whether she suffered emotional distress from the effects of any negligence affecting her fetus or herself in this case but also supports the conclusion that Mr. Sesma, the father, may be able to show that he is a 'direct victim'—if not percipient witness—of negligent acts giving rise to infliction of serious emotional distress." (*Ibid.*)

However, *Molien* like its predecessor Supreme Court opinions in this field also stressed some limiting factors which apply to its emotional distress theory. In holding the husband was a "direct victim" the court emphasized "It is easily predictable that an erroneous diagnosis of syphilis and its probable source would produce marital discord and resultant emotional distress to a married patient's spouse; [the doctor's] *advice to Mrs. Molien to have her husband examined for the disease* confirms that plaintiff was a foreseeable victim of the negligent diagnosis. Because the *disease* is *normally transmitted only by sexual relations,* it is rational to anticipate that both husband and wife would experience anxiety, suspicion, and hostility when confronted with what they had every reason to believe was reliable medical evidence of a particularly noxious infidelity. [¶] We thus agree with plaintiff that [the misdiagnosis] was *directed to him* as well as to his wife." (27 Cal.3d at p. 923, italics added.) Other Courts of Appeal focussed on this limiting language and confined the "direct victim" theory within very narrow boundaries. (See, e.g., *Budavari* v. *Barry, supra,* 176 Cal.App.3d 849.)

In July 1985, the Supreme Court chose to underscore the limiting language rather than the broad foreseeability phrases of its *Molien* decision. (*Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1].) There, doctors refused to treat the plaintiff mother's desperately ill son in a juvenile facility despite the mother's pleas because they misdiagnosed his disease as a minor infection. The boy suffered for several days and died.

If reasonable foreseeability indeed were the standard it would be hard to argue it was not reasonably foreseeable the mother the doctors were talking to would suffer serious emotional distress if their diagnosis turned out to be wrong and their minimal medical treatment therefore inadequate. Nonetheless, although the court allowed the mother to recover as a "bystander" to her son's suffering, it explicitly ruled she was not a "direct victim." "In *Molien* defendant's misdiagnosis was, by its very nature directed at both the wife and the husband. The wife was asked to tell her husband of the diagnosis and the husband was required to submit to tests. By contrast, here the defendant's negligence in the instant case was directed primarily at the decedent, with Mrs. Ochoa looking on as a helpless bystander as the tragedy of her son's demise unfolded before her. While she was a foreseeable plaintiff to whom the defendants owed a duty of care pursuant to our holding in *Dillon*, the duty owed was owed to her as a percipient witness, not as a direct victim of negligence." (39 Cal.3d at pp. 172-173.)

In the instant case, Dr. Judkins' misdiagnosis was directed at Edward Kossel not the petitioner. Indeed the doctor did not even mention the misdiagnosis to Mrs. Kossel in this case while the doctors did tell Mrs. Ochoa her son only had a slight infection. But this direct communication from doctor to the patient's mother was not enough to make her a direct victim. Although it was foreseeable Mr. Kossel would tell his wife the good news about the benign tumor, petitioner does not allege Dr. Judkins asked Mr. Kossel to tell his wife of the diagnosis. Neither was the diagnosis of her husband's benign tumor one that would directly affect the physical health of Mrs. Kossel in the same way as the diagnosis his wife had a communicable disease like syphilis affected the husband in *Molien*.

Petitioner contends this division's decision in *Accounts Adjustment Bureau v. Cooperman* (1984) 158 Cal.App.3d 844 [204 Cal.Rptr. 881], supports her claim. In *Cooperman* the parents discovered the alleged negligent diagnosis of their infant son from billing notations received 18 months after the professional services had been concluded. (*Id.*, at p. 846.) Defendant diagnosed the child as having a nonpsychotic organic brain syndrome. (*Ibid.*) The parents claimed shock and distress as a result of the negligent diagnosis. This court held that as a matter of law a negligent diagnosis an infant has a serious, disabling condition can cause serious distress to parents. (*Id.*, at p. 848.) *Cooperman* is unlike the instant petition because the communication of the negligent diagnosis was made directly to the parents by receipt of the bill. Indeed diagnosis of an infant's health typically is given to the parents not the child and in large part for their direct benefit. Thus, they are "direct victims" of any misdiagnosis calculated to cause them serious mental distress.

In the instant case, the misdiagnosis was not directed to Mrs. Kossel but solely to her husband and primarily for his benefit. The doctor did not even suggest he tell her about the diagnosis. Moreover, unlike *Molien*, this misdiagnosis did not involve a communicable disease which if present might have infected Mrs. Kossel. Rightly or wrongly, the Supreme Court has narrowly defined what it takes to be a "direct victim" under *Molien* and *Ochoa*. A reasonable foreseeability the plaintiff will hear about a misdiagnosis of a spouse's illness and a reasonable probability this misdiagnosis will cause her great mental distress is not enough.

## II. PETITIONER DID NOT STATE A CAUSE OF ACTION AS A "THIRD PARTY BENEFICIARY" OF DUTIES OWED HER SPOUSE UNDER THE LATTER'S CONTRACT WITH THE TREATING PHYSICIANS

In the alternative, petitioner argues she is a direct victim as a "third party beneficiary" of the contract between her husband and the defendant physician. This theory was first propounded in *Andalon v. Superior Court* (1984) 162 Cal.App.3d 600 [208 Cal.Rptr. 899] and followed in *Newton v. Kaiser Hospital* (1986) 184 Cal.App.3d 386 [228 Cal.Rptr. 890]. In both of these cases medical malpractice before and during delivery allegedly led to the birth of children with severe handicaps—Down's Syndrome in *Andalon* and partial paralysis in *Newton*. The parents sued the responsible physicians for negligent infliction of emotional injury because their children were born with these handicaps. The Third District held the mothers were in a contractual relationship with the physicians to treat them and their fetuses during the pregnancies. It further held the physicians thereby assumed a duty *in tort* to render *competent* medical care. They violated this duty to the mother when they negligently diagnosed and treated the baby and inflicted emotional harm on her. More significantly for the instant case, the Third District also held the fathers were "direct victims" eligible to recover for their emotional distress. As the court explained in *Andalon*: "[The father's] injury is not merely derivative of [his wife's] injury but flows from his role as a participant in the reproductive life of the marital couple . . . . The tort duty arising from the contract between [the doctor] and [his wife] runs to him, not merely because of the foreseeability of emotional harm to him, but because of the nexus between his significant interests and the 'end and aim' of the contractual relationship." (*Andalon v. Superior Court, supra,* 162 Cal.App.3d 600, 611.)

Whatever the viability of this theory in cases involving the prenatal care and birth of babies nothing in *Andalon* or *Newton* supports its application to a wife's right to recover for emotional distress arising from the misdiagnosis of her husband's illness. Indeed here the wife's injury *is* "merely derivative of" her husband's injury and in no sense "flows from [her] role

as a participant in the reproductive life of the marital couple." Nor is there a "nexus between [her] significant interests and the 'end and aim' of the contractual relationship." In *Andalon* and *Newton,* the "end and aim" of the contract between the wife and the doctor was to produce a healthy child (or as healthy a child as competent care could produce). However, that baby was the child of the husband as well as the wife. Consequently, the husband had nearly as significant an interest in the "end and aim" of the contract as did the wife.

The same thing cannot be said about the contract between the husband and his physicians in this case. This contract was to properly diagnose and treat the *husband's* illnesses not to properly birth a new being who shared the genes of both the husband and his wife. Mrs. Kossel may have had some sort of "derivative" interest in the performance of this contract. So did his children and his relatives and friends. But her interest was not closely enough related to the "end and aim" of the contractual relationship to qualify as a "direct victim" even under *Andalon* and *Newton.*

Mrs. Kossel does not even claim a cause of action as a "bystander" (sometimes called a "percipient witness") to a traumatic incident which injured her spouse. This is the only other theory of recovery the Supreme Court recognizes thus far for negligent infliction of emotional distress. Consequently, the trial court properly sustained a demurrer to the emotional distress cause of action in Mrs. Kossel's complaint.

### DISPOSITION

The alternative writ of mandate is discharged and the petition denied.

Lillie, P. J., and Thompson, J., concurred.

Petitioners' application for review by the Supreme Court was denied January 28, 1987.