[No. B023338. Second Dist., Div. Three. Aug. 10, 1988.]

ROGER E. ANDERSON et al., Plaintiffs and Appellants, v. NORTHROP CORPORATION et al., Defendants and Respondents.

COUNSEL

Dennis Russell and Mark H. Krietzman for Plaintiffs and Appellants.

Shield & Smith and Douglas Fee for Defendants and Respondents.

OPINION

ARABIAN, J.—

### INTRODUCTION

Plaintiff Pauline Anderson (Pauline) appeals from an order of dismissal entered after the trial court sustained demurrers to her causes of action for negligent infliction of emotional distress and loss of consortium. These claims arose from the allegedly wrongful termination of her husband Roger E. Anderson (Roger) by defendant Northrop Corporation (Northrop). We find that Pauline failed to set forth facts establishing she was a direct victim of Northrop's assertedly tortious conduct and that Roger did not suffer sufficient mental or physical harm to significantly impair their marital relationship. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1977 Roger accepted employment with Northrop and was assigned to perform his duties as technical language instructor and supervisor in Saudi Arabia. With Northrop's knowledge, Pauline relocated with him. Seven and one-half years after the Andersons' apparently successful settlement in Saudi Arabia, Northrop terminated Roger, allegedly without cause and in violation of its own policies and regulations as well as California statutory and decisional law. On December 2, 1985, the Andersons brought suit: Roger for wrongful termination and breach of covenant of good faith and fair dealing; and Pauline for negligent infliction of emotional distress and loss of consortium.

In their amended complaint, the Andersons asserted Northrop had assisted in their relocation in part by providing information about the "culture shock" they might experience in a Middle Eastern country. Northrop also acknowledged Pauline would join Roger within several months of his arrival in Saudi Arabia; but it did not require, request, encourage, or otherwise directly involve her in her husband's transfer. She further averred that during their tenure, she "became assimilated into the Saudi Arabian Cul-

ture and grew accustomed to their lifestyle. However, when [Northrop] suddenly, without just cause, terminated [Roger], [their] security, future, and lifestyle collapsed. [They] were now unemployed in a foreign mid-east country, without any prospects of future employment. Moreover, [they] were forced to disrupt their lifestyle in Saudi Arabia and re-enter the United States in order to find employment. Once again, [Pauline] had to re-adjust into another society and culture." Because Northrop could reasonably foresee her anxiety at the upheaval precipitated by Roger's wrongful termination, it was legally responsible for her resulting "mental distress, upset and aggravation . . . ."

Pauline also pleaded a cause of action for loss of consortium. Her only additional allegation was that she had "suffered a loss of society, companionship and support" from Roger. As to the extent of Roger's incapacity to participate fully in the marital relationship, the complaint elsewhere stated he had "become mentally upset, distressed and aggravated."

The trial court sustained Northrop's demurrers, finding as to each cause of action that defendant had no legal duty toward Pauline because her injuries were not foreseeable.

### ISSUES PRESENTED

This case raises two issues: First, whether Pauline has stated a cause of action for negligent infliction of emotional distress based upon Northrop's termination of her husband. Second, whether the pleadings allege a sufficient impairment of Roger's spousal functions to support Pauline's cause of action for loss of consortium.

### DISCUSSION

■ " 'A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]' [Citation.] 'In determining whether or not the complaint is sufficient, as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' [Citation.] In other words, 'plaintiff need only plead facts showing that he may be entitled to some relief [citation].' [Citation.] Furthermore, we are not con-

cerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint. [Citation. Footnote.]" (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

## I. *Negligent Infliction of Emotional Distress*

Clearly, the most compelling aspect of this case is that because of Roger's employment with Northrop, Pauline changed not only her residence but her entire way of life in relocating to Saudi Arabia, a foreign country in every sense of the word. Northrop's own description of the anticipated "culture shock" as well as common experience attest to the myriad of fundamental adjustments necessary in making the transition to living in another country.

Nevertheless, as we explain, the move to Saudi Arabia has no more than a tangential bearing upon the ultimate legal question before us: whether, in terminating Roger's employment, Northrop's conduct gave rise to a duty to refrain from negligently inflicting emotional distress on Pauline. Or, stated more generally, may one spouse state an independent cause of action for negligent infliction of emotional distress resulting from the allegedly unlawful termination of the other spouse's employment?

The gist of any negligence action is whether the defendant owed a duty of care to the plaintiff, the breach of which has occasioned him or her injury. (See *Bogard* v. *Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 618 [210 Cal.Rptr. 578].) Pauline correctly identifies foreseeability as the critical determinant of duty. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739-740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) "But foreseeability, without more, provides . . . an unworkable delineation of the extent of a tortfeasor's liability." (*Andalon* v. *Superior Court* (1984) 162 Cal.App.3d 600, 610 [208 Cal.Rptr. 899].) Thus, a plaintiff must establish a more substantial nexus than simply the likelihood that the conduct might cause him or her some harm. (See *Newton* v. *Kaiser Foundation Hospitals* (1986) 184 Cal.App.3d 386, 391-392 [228 Cal.Rptr. 890]; *Goodwin* v. *Reilley* (1985) 176 Cal.App.3d 86, 97-98 [221 Cal.Rptr. 374].)

"[I]t is fair to observe, in nonimpact cases, that there are only two salients in which liability has been successfully established. One such salient is the so-called 'direct victim' concept applied in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; the other is the traumatized bystander scenario first recognized in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] . . . ." (*Soto* v. *Royal Globe Ins. Co.* (1986) 184 Cal.App.3d 420, 432 [229 Cal.Rptr. 192].) In *Molien,* the defendant misdiagnosed Mrs. Molien, the plaintiff's wife, as having contracted syphilis.

He further advised her to inform her husband, who would have to be tested and treated if necessary. "As a result of the negligently erroneous diagnosis, [Mrs. Molien] became upset and suspicious that [Mr. Molien] had engaged in extramarital sexual activities; tension and hostility arose between the two, 'causing a break-up of their marriage and the initiation of dissolution proceedings.'" (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518].)

The Supreme Court held that Mr. Molien had stated a cause of action for negligent infliction of emotional distress, thereby establishing the "direct victim" basis for a duty of care to that class of plaintiffs. By the nature of the misdiagnosis, which specifically included (mis)informing Mr. Molien, "the alleged tortious conduct of defendant was directed to him as well as his wife. Because the risk of harm to him was reasonably foreseeable . . . under these circumstances defendants owed plaintiff a duty to exercise due care in diagnosing the physical condition of his wife." (27 Cal.3d at p. 923.)

The instant case also involves allegedly tortious conduct toward one spouse and a related claim for emotional distress by the other spouse. There, however, the similarity ends. Pauline made no assertion that Northrop directed its termination of Roger toward her. Although it may have been foreseeable that he would inform her and that she would be upset at learning of this unfortunate turn of events, Northrop did not expressly or impliedly advise him to do so. Northrop might well have anticipated that Pauline would quite naturally suffer under the circumstances; but it did nothing to include her within the scope of its allegedly improper actions. Pauline places great reliance upon *Molien*'s extensive discussion of foreseeability, yet fails to consider its context. While foreseeability of harm substantially informs the imposition of a legal duty, it must be linked with tortious conduct directed toward the plaintiff. (See *Newton* v. *Kaiser Foundation Hospitals, supra,* 184 Cal.App.3d at pp. 391-392; *Goodwin* v. *Reilley, supra,* 176 Cal.App.3d at pp. 97-98.)

In light of the foregoing analysis, the fact the Andersons were living in Saudi Arabia at the time of Roger's termination cannot enhance Pauline's rights against Northrop.[1] Human experience suggests that any spouse will

---

[1] In the present factual context, we need not address the question of whether, under other circumstances, Pauline could have stated a cause of action for negligent infliction of emotional distress based upon the manner in which Northrop assisted in the transfer to Saudi Arabia, i.e., whether an employer undertaking to assist in a married employee's job relocation owes a duty of care to the nonemployee spouse who may necessarily be included in that process. From the pleadings, it appears the Andersons accommodated their change in residence without substantial incident. Thus, the resettlement in Saudia Arabia had already been successfully concluded long before Northrop terminated Roger allegedly without just cause; and the

undergo some distress in coping with his or her partner's sudden change in employment status regardless of their place of residence. Anxiety about meeting financial obligations, finding a new job or regaining the old, and generally maintaining some semblence of normalcy in day-to-day living will invariably attend such straitened circumstances. Nevertheless, if the tortfeasor employer did not direct conduct to the nonemployee spouse within the rationale of *Molien,* no duty arises; and, hence, no cause of action exists irrespective of the situs of employment. At most, Pauline's relocation to Saudi Arabia would go to the degree or certainty of her damages if she could have established a legal duty. (See, e.g., *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at pp. 926-931.)

Our conclusion finds support on several fronts. First, although Pauline's rights are not strictly derivative of her husband's, Roger's express or implied employment contract with Northrop and its attendant covenant of good faith and fair dealing form the basis for any action on her behalf. Indeed, in the absence of an actionable employment relationship, Roger himself would be without legal recourse for his assertedly unjustified termination. (See, e.g., Lab. Code, § 2922.) That is, his tort actions flow only from the contractual interrelation between employer and employee. (See, e.g., *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 327-328 [171 Cal.Rptr. 917].) Pauline was neither in privity of that contract nor its intended beneficiary; thus, the law precludes her recovery against either of the parties for negligent performance. (See *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 648-650 [320 P.2d 16, 65 A.L.R.2d 1358].)

Second, the case of *Soto* v. *Royal Globe Ins. Co., supra,* 184 Cal.App.3d 420, is particularly instructive in light of our facts. In that case, an injured employee's family members brought suit for breach of the implied covenant of good faith and fair dealing and for negligent infliction of emotional distress due to an insurer's failure to make timely payment of the employee's workers' compensation award. In upholding a subsequent demurrer, the reviewing court first noted, "One who is not a party to the insurance contract and the accompanying implied covenant of good faith and fair dealing may not maintain an action for breach of the covenant. [Citations.]" (*Id.,* at p. 430.) The court also rejected a theory of recovery based upon *Molien*: "On the facts alleged . . ., it would be a massive contortion of logic to describe defendant insurer's action in delaying payment of plaintiff employee's WCAB award as 'directed' at the plaintiff family members [citation]." (*Id.,* at p. 432.) As pled, Pauline's cause of action for negligent infliction of emotional distress can survive only with a similar contortion of the "direct victim" logic.

complaint contains no facts otherwise establishing some connection between Northrop's handling of the initial move and its subsequent termination of Roger's employment.

Finally, we find a useful analogy in certain medical malpractice cases denying a cause of action to indirect victims of the defendants' negligence. In *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1], the plaintiff mother brought suit following her son's death while confined to the defendants' detention facility. Although the boy was clearly suffering extreme physical pain and a high fever, the defendants refused to allow his examination by the plaintiff's own physician. They also negligently performed their own treatment of his condition, which resulted in his death.

The Supreme Court denied the mother a cause of action for negligent infliction of emotional distress because she was not a "direct victim" of the defendants' tortious conduct. As the court explained: "In *Molien* defendant's misdiagnosis was, by its very nature directed at both the wife and the husband. The wife was asked to tell her husband of the diagnosis and the husband was required to submit to tests. By contrast, here the defendants' negligence . . . was directed primarily at the decedent, with Mrs. Ochoa looking on as a helpless bystander as the tragedy of her son's demise unfolded before her. While she was a foreseeable plaintiff to whom the defendants owed a duty of care pursuant to . . . *Dillon,* the duty owed was owed to her as a percipient witness, not as a direct victim of negligence." (39 Cal.3d at pp. 172-173.)

Even more closely on point is the case of *Kossel* v. *Superior Court* (1986) 186 Cal.App.3d 1060 [231 Cal.Rptr. 183], in which the defendant misdiagnosed a patient's condition as a benign fatty tumor when in fact he was suffering from Hodgkin's disease. The patient's wife, initially relieved by the favorable results, experienced severe emotional distress when the truth was discovered after the disease had reached an incurable state and she had to endure her husband's physical deterioration and death. Despite the undeniable harm suffered, the Court of Appeal denied recovery for negligent infliction of emotional distress under *Molien* as limited by *Ochoa* v. *Superior Court, supra*: "[The defendant's] misdiagnosis was directed at Edward Kossel [plaintiff's husband] not [plaintiff]. Indeed the doctor did not even mention the misdiagnosis to Mrs. Kossel . . . . Although it was foreseeable Mr. Kossel would tell his wife the good news about the benign tumor, [plaintiff] does not allege [defendant] asked Mr. Kossel to tell his wife of the diagnosis. Neither was the diagnosis of her husband's benign tumor one that would directly affect the physical health of Mrs. Kossel in the same way as the diagnosis his wife had a communicable disease like syphilis affected the husband in *Molien.*" (*Kossel* v. *Superior Court, supra,* 186 Cal.App.3d at p. 1067; see also *Martinez* v. *County of Los Angeles* (1986) 186 Cal.App.3d 884, 893-894 [231 Cal.Rptr. 96]; *Budavari* v. *Barry* (1986) 176 Cal.App.3d

849, 853-854 [222 Cal.Rptr. 446]; *Wiggins v. Royale Convalescent Hospital* (1984) 158 Cal.App.3d 914, 917-918 [206 Cal.Rptr. 2].)

Given the factual analogy, a corresponding result must obtain in this case. Undeniably, the disruption to Pauline's way of life was real, and no less so because the harm is without legal compensation. However, apart from its allegedly unlawful termination of Roger, Northrop's actions added nothing to the expectation she might thereby suffer some injury. No duty can arise in the absence of some word or deed making a nonemployee spouse a direct victim of the employer's tortious conduct. (*Molien v. Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 923.)

II. *Loss of Consortium*

■ In addition to her emotional distress, Pauline asserted she "suffered a loss of society, companionship and support" from Roger. The trial court also correctly sustained Northrop's demurrer to this attempt to plead a cause of action for loss of consortium in that Pauline failed to plead facts sufficient to establish a significant impairment of Roger's participation in their marital relationship.

In *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408 [115 Cal.Rptr. 765, 525 P.2d 669], the California Supreme Court established the right of one spouse to state a cause of action for loss of companionship, emotional support, love, felicity, and sexual relations "caused by a negligent or intentional injury to the other spouse by a third party." Although *Rodriguez* involved serious spinal cord damage with resulting paralysis, "[t]he loss of consortium does not require severe physical injury to the nonplaintiff spouse; certain psychological injuries can be no less severe and debilitating than physical injuries. [Citation.]" (*Ledger v. Tippitt* (1985) 164 Cal.App.3d 625, 633 [210 Cal.Rptr. 814].) As our high court recognized in *Molien v. Kaiser Foundation Hospitals, supra,* 27 Cal.3d at page 933, "a marital relationship can be grievously injured when one spouse suffers a traumatically induced neurosis, psychosis, chronic depression, or phobia."

Pauline predicated her action on a psychological, rather than a physical, injury to her husband. However, Roger made no independent claim for negligent or intentional infliction of emotional distress, asserting only that he became "mentally upset, distressed and aggravated" as a result of his termination. We do not find such emotional disquiet rises to the level of a "neurosis, psychosis, chronic depression, or phobia" sufficient to substantially disturb the marital relationship on more than a temporary basis. (*Molien v. Kaiser Foundation Hospital, supra,* 27 Cal.3d at p. 933; see *United Services Automobile Assn. v. Warner* (1976) 64 Cal.App.3d 957, 964 [135

Cal.Rptr. 34]; see also *Bogard* v. *Employers Casualty Co., supra,* 164 Cal.App.3d at p. 618; *Kelly* v. *General Telephone Co.* (1982) 136 Cal.App.3d 278, 286-287 [186 Cal.Rptr. 184].)

Moreover, although Pauline may have been upset, the complaint failed to allege Roger was so incapacitated that he could " 'no longer be a companion and [was] no longer capable of giving love, affection, society, comfort and sexual relations to [her] . . . .' [Citation.]" (*Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d at p. 400; see *United Services Automobile Assn.* v. *Warner, supra,* 64 Cal.App.3d at p. 964.) "*Rodriguez* contemplates injury to the *nonplaintiff* spouse that is sufficiently serious and disabling to raise the inference that the conjugal relationship is more than superficially or temporarily impaired. [Italics added.]" (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at pp. 932-933.) Pauline's pleadings did not set forth facts thus contemplated by the rationale underlying an action for loss of consortium; and, the trial court properly sustained Northrop's demurrer.

### DISPOSITION

The order of dismissal is affirmed. Appellant to bear costs on appeal.

Danielson, Acting P. J., and Luros, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.